Nash, J.
 

 There is no controversy at this time between these parties, as to the title of Buckner Davis, the grandfather of the plaintiffs, to the negroes in question, or ns to the character, in which they were held by the defendants, Peter R. and Stephen Davis, his executors. Upon a former occasion, the court has declared in this case, that they did belong to Buckner Davis, and not to his children, and that the executors held them in trust for Mrs. Elizabeth Christmas, during her life, and, after her death, in trust for the plaintiffs. The questions now presented for our determination are:
 
 First,
 
 is Peter R. Mitchell a purchaser for a valuable consideration, without notice of the plaintiffs’ equity.
 
 Secondly,
 
 Is the plaintiffs’ claim barred by the statutes of ,limitado n ; and
 
 *540
 

 thirdly,
 
 was Leonidas Christmas, at the time he came
 
 of age,
 
 ^10t or 'u'lahct or Person °f insane mind, so as to come within the exceptions contained within the acts.
 

 Upon the last point the plaintiffs have produced in evidence the inquisition of a jury, duly ordered by the County Court of Warren, and duly summoned by the sheriff, who say, that “ we believe him to be a man of unsound mind,”
 
 Spe.
 
 This inquisition is imperfect, in not stating when the mind of Le.onidas Christmas became unsound — whether it was before he .came of age or after. They do not find him an idiot; which, if unexplained, might be considered as existing with his birth, but of unsound mind, which may be produced by various .causes, and exist at different periods, and is not, when it does .exist, permanent in its character. It is therefore insufficient :in itself, and does not decide one important point referred to the jury. But if there were no objection to the inquisition, it would still be open to b.e rebutted by the defendants by contradicting evidence. It js itself, but presumptive evidence to the court, of the fact it alleges.
 
 Armstrong and others
 
 v.
 
 Short,
 
 1 Haw. 11, The plaintiffs and defendant Mitchell, have, therefore, introduced evidence on this point. The witnesses, on the part of the defendant, are Jane Green, Tabitha Jordan, Lewis Y. Christmas, James W. Jordan, E. W. Best, Thomas E. Green, Dr. P. C. Pope; and the latter is examined by the plaintiffs to the same
 
 point. All
 
 these witnesses say, Leonidas is not an idiot, but do not think him capable of ¡attending to business, requiring information. The two first say, he is not capable of doing any business, because he cannot understand. Leonidas, it is admitted, has been deaf and dumb from his birth, and is therefore ignorant and uninformed, rio efforts having been made to instruct him. But all the other witnesses unite in saying, his mind is naturally good, and the testimony of Lewis Y. Christmas and Dr. Pope, is
 
 vety
 
 strong and satisfactory. The former says — I dont think he labors under any mental infirmity, but owing to his entire deafness, he is incapable of any business. Again he says, 1 thjnk he .could ibe learnt any mechanical business, but owing
 
 *541
 
 to his entire deafness, he could not be made
 
 (o
 
 understand any intricate business, such as law suits, or things of that character. Ur. Pope says, “I know him well enough to know, he is not an idiot; lie is deaf and dumb, and the amount of his information is very small, but i believe he has a natural capacity to learn, but there have been no pains taken to instruct him ; therefore, 1 think him incapable to transact the ordinary business of life.” With these two last witnesses, substantially agree Mr. Best, Mr. Green, and Mr. Jordan. The expression used in our Statutes for the protection of persons of this description is
 
 non compos mentis.
 
 Such persons are not barred by the Statute, until three years after coming to sound mind. According to Lord Coke, 1st Ins. 405, p. 246, the term,
 
 non compos
 
 mentis, embraces defects of mind of four sorts ; 1st. An idiot, one who is an idiot, or óf non sane mind from his nativity. 2d. One who wholly loseth his memory and understanding, by sickness, grief, or other accident. 3rd. A lunatic who sometimes hath his understanding and sometimes not; and 4th, he who by his own vices, for a time
 
 depriveth
 
 himself of his memory and understanding. The mental infirmity of Leonidas, if it exist at all, is of the first description, which has relation to the power and capacity of the mind to receive instruction, and not to the amount of instruction or information actually received. With the exception of two, all the witnesses agree in the ability of Leonidas to learn, if proper effors hud been made. Formerly, one who WaS born deaf and dumb, was considered, in presumption of Jaw, an idiot; 1st Hale P. C. 34. This presumption of law, if it still exists, like every other presumption, yields to proof to the contrary, and Lord Hardwick decreed an estate to one born deaf and dumb, upon his answering, properly, questions put to him in writing.
 
 Dickenson and Blissott,
 
 1 Dick. 268. But science and benevolence have together rectified the public mind, as to such persons, and it is no longer, in common understanding, any evidence, that an individual is an idiot, because deprived from his birth of the power of speech and hearing. No one, who has witnessed the wonders forked in
 
 *542
 
 modern times, in giving instruction to unfortunate persons of is class, would, after hearing the testimony in this case doubt, that Leonidas Christmas might- have been instructed, 1Jot onjy jn rnechanie artSj that his mind might have been enlightened, to receive the high moral obligations of civil life, and the still more profound truths of our'holy religion. We are constrained then to say, that he does not come within the exception contained in the statutes.
 

 The next inquiry L, do the statutes of limitation protect the defendant? The evidence shows,- that Leonidas Christmas was the oldest of the children of Elizabeth C. Davis; and that he was born on’the 20th November, IS 17”, and of course that he come of age-the 20th November, 1S38. At October Term, 1842, of Warren Court of Equity, leave was granted to the plaintiffs to amend their bill; and the present bill, called in its caption an amended bill, was filed: at which time Leonidas had been of age near four years, and is consequently barred by the statutes.
 

 According to the same evidence, Buckner Christmas was born on the 30th June, 1819, and became of age the 30th June, 1840. Of course, not more than two years and four months had elapsed, after he came of age, before this bill was filed, and the other plaintiffs are younger than he is. They then are not barred, because at the time the defendant, Mitchell, purchased, they were infants'; and (he statute had never' commenced running against them or any person, under whom they claim. The defendant, Mitchell, contends, that this is not an amended bill, but an original one, and that the statutes of limitations must be computed from the filing of this, and not of the former bill. The plaintiffs contend it is an amended bill, and constitutes, with the original, one suit. In the view we have taken of the subject, it is not of much importance to decide this question. We are of opinion, however, that it is an amended bill. But it introduces new matter, or rather a new charge against the defendant, Mitchell. It is true,, that the deed of release or bargain and sale, executed by the executors, Peter R. and Stephen Davis, was an exhibit in
 
 *543
 
 the original bill, and constituted a port of it; but the object of the bill was to obtain from Mitchell and White, the reconveyance of the land mentioned m the deed, and prayed no relief againt Mitchell, as to the negroes. This bill makes this charge," and prays relief against him upon this ground. When a bill is amended, the defendant may make such defence as he thinks proper. Red. P. 323. So far, then, as this bill seeks relief against Mitchell on account of these slaves, it is an original charge brought against him for the first time, and he is entitled, as to the statute of limitations, to consider it an original bill. But we repeat, it is an unimportant question here, because it introduces a new charge against the defendant, Mitchell.
 

 It is lastly insisted on by the defendant, Mitchell, that he is a purchaser for a full and valuable consideration, without' notice of the equity of the plaintiffs. If this be so, he will be entitled to be quieted in his possession of the slaves ; for in that case, his equity will be equal to that of the plaintiffs, and they will not be entitled to the aid of the court.
 

 It cannot be questioned, that Thomas H. Christmas, from whom he,' the defendant, Mitchell, purchased the negroes, knew of the equitable claim of the plaintiffs, and was a mere volunteer, and therefore held the negroes precisely as Peter R. and Stephen Davis did, in trust for the plaintiffs, but it does not therefore follow, that the defendant, Mitchell, who is a purchaser for a valuable consideration, knew of their equity. And, indeed, his case is so far stronger than Thomas H. Christmas’, that he is not a purchaser from an executor, but from an individual, who was in the quiet possession of the slaves, claiming them as his own. Notwithstanding this, however, if he purchased knowing the fiduciary character, in which his vendor stood to the plaintiffs, or under such circumstances as ought to have put him on his guard and caused (him to make inquiry, he will be held as a trustee for the plaintiff.' The defendant, Mitchell, admits that, at and before his purchase of the negroes in dispute, he had understood and believed they had been in the possession of Buckner Davis, and
 
 *544
 
 were $0 at his death, and passed with the
 
 test of his property
 
 'nto ^le Possessf°n of his executors, and that from common rumor he had understood, that Buckner Davis had appointed peteg p and Stephen Davis his executors, and had given them the whole of his property, and left his children entirely 'dependent lipón them; but of the nature of his title he had no more knowledge, than of the contents of his will. He further admits, that before and at the time of his purchase, he had understood and believed,- that the said executors had
 
 delivered
 
 said negro slaves to Thomas H. Christmas, and.that they were in his possession, but upon what consideration, or whether they were conveyed by deed or merely by delivery, he did not know, but doubted not, that as executors, they had by law full power to dispose of them.
 

 It has been argued before us, that as Thomas H. Christmas dealt with and took from the executors the negroes in dispute, Mitchell had a right to suppose the executors were rightfully disposing of them. There can be no doubt, but the power of an executor over the assets is very large, both at law and in equity. And it is so, to enable him to execute the trust com-' mitted to him, and to prevent the inconvenience and danger, which would result to those dealing with him. If, therefore, the transaction is nothing more than a sale of a part of the assets for money advanced at the time, the vendee can never be affected by the fact, that it was the intention of' the executors to appropriate the money to their own use, or that they did actually misapply it.
 
 McLeod
 
 against
 
 Drummond,
 
 17th Ves. Jr. 153.
 
 Kean and others
 
 v.
 
 Roberts and others,
 
 4 Mad. R. 190. In other words, the purchaser is not obliged ter look to the application of the purchase money. But here, Thomas H. Christmas is not a purchaser, but a mere volunteer, and held the negroes in trust for. the plaintiffs. Peter Mitchell denies he had notice,
 
 in fact,
 
 of the equity of the plaintiffs. Do not the circumstances, admitted by him in his' answer, together with others appearing in the case, fix him with implied notice ; are they not such, as would have put a man of ordinary prudence, upon an inquiry as to the tifie of
 
 *545
 
 the property he was about to purchase. Among the exhibits filed in the case, is a deed of trust given by Thomas H. mas to Thomas Bragg, dated the 9th of March, 1S27, to secure to Peter Mitchell and John White a debt due to them. In the answer to the original bill filed by the defendant, Mitchell, he admits this deed was made by his request. It conveys a tract of land, which is described by metes and bounds1; the deed then as a further description states, “ which land the late Buckner Davis, by his last will and testament, left to the'use and support of his son, Peter M. Davis.” Although, then, the general rumor in the neighborhood was, that Buckner Davis had willed to his executors all his property, and left his children dependent on them, here was direct notibe to the defendant, Mitchell; that such common rumor was false; that Buckner Davis had hot acted the unnatural part attributed to him; that he had not devised all his property to his executors, and left his'children destitute; that he had placed this land in their hands as trustees for Peter M. Davis, one of the children. We will not say this deed was notice to Peter Mitchell of all the trusts in the will, but we do say, it was sufficient to put him on his guard, and impóse upon him the duty and necessity of inquiring into the title of his vendor add of the executors:
 
 Maples
 
 v.
 
 Medlin and others,
 
 1 Mur. 219. But again : another exhibit in the base is the deed from Peter II: and Stephen Davis; tó Thomas H. Christmas. The doctrine of constructive notice arises out of the duty, as an act of common prudence, in every purchaser, to see that his vendor has
 
 prima facie
 
 a good title; and, therefore, he will be affected with notices of the contents of such deeds or documents, ns the vendor must produce to make out his title. Hence, Mitch-' ell should, in this case; have called for the conveyance from Buckner Davis’ executors. That deed states that tlie testator had disposed of the negroes by his will, as his property,- and that the executors gave them up, and thereby conveyed them to Christmas upon a claim of property by him; which,- upon the face of the deed was manifestly unfounded in law; and to which thb executors ought nót tó hate yielded: The court-
 
 *546
 
 has heretofore so decclared upon, that deed, and that Christ-» m&S kecame a trustee for his children, upon the face of his own title, having, without any consideration, taken from the exec-U(0rs a ¿ee¿ for their testator’s property, stated in the deed to have been bequeathed by the testator. In the same manner, and for the same reason, it would have been actual notice- to Mitchell if he had seen it; and in law, it is constructive notice of its contents, and by consequence of the contents of the will, if in law he ought to have called for it, in order to make out á good title. That it was so necessary, we think clear. If- Thomas H. Christmas had purchased the negroes, and could have shewn that to Mitchell, then he would have had an apparent title, as slaves can pass in this State in'that mode. But such was not the case; he was a mere volunteer, and had not had the possession one year. Therefore his deed was indispensable,-to give him any appearance of title,-under the ex-» ecutors of Buckner Davis, from whom Mitchell admits he knew Christmas claimed. It is said, indeed, that this doctrine of constructive notice applies only to real estate, because that cannot pass by parol. But slaves are within the same reason,in those cases irt which a good title
 
 inter vivos
 
 can be made only by deed, to wit, gifts, which was the case here. Besides it is a mistake to suppose, that it does not apply to all cases of personalty, where a purchaser knows his vendor derived his title under a deed, will, or other writing. He must look to these documents themselves, and not trust to any representation of the party. This is fully established by the case of
 
 'Hill against Simpson and Wright and
 
 others, 7 Ves. Jr. 152. In that case, Elizabeth Smith, by her will, bequeathed to her executors all her personal estate, secureties for moneys, goods and chattels, in trust for certain legatees, among whom were the plaintiffs,’ and appointed the defendants, Simpson and Wright, her executors. At the time of her death, certain stocks and annuities were standing on the books of the bank, in the name of John Smith, of whom Elizabeth Smith was the executrix. Simpson alleging the stock to be his, by the will of Elizabeth Smith, transferred it to the defendants, Moffat & Co. his bank
 
 *547
 
 ers, as a security for such money as he then owed them, or might thereafter owe them. The bill was filed against the executors and against Moffat & Co. to compel a reconveyance ° of the stock. The bankers denied, that at the time of the transfer, they knew or suspected the stock did not belong to Simpson, absolutely, either as executor or devisee ofElizabeth Smith. There was no evidence in the case. The master of the rolls, in closing his opinion, observes, “ Hitherto 1 have supposed the assignees of the executor have seen it was not true; common prudence required that they should look at the will, and not take the executor’s word, as to his right under it. If they neglect that and take the chance of his speaking the truth,' they must incur the hazard of his falsehood. The rights of third persons must not be affected by their negligence. I do not impute to them direct fraud, but they acted rashly, incautiously and without the common attention used in the ordinary course of business. It was gross negligence not to look at the will, under which alone a title could be given to them.” This case decides two principles, one which is importantjn the one before us; the one, that a general pecuniary legatee has a right in equity to follow assets, and the other, that gross negligence, on the part of him, who deals with an executor, will in equity be considered notice of the abuse of his authority, although in the transfer of personalties. The master of the rolls uses very strong language. We will again repeat we are satisfied, the executors, in this case, acted under an honest mistake, and that when Mr. Davis, at the sale of the negroes, assured the defendant Mitchell he might safely purchase, he honastly believed so, nor would we impute to the defendant. Peter Mitchell, anything more than gross negligence. He knew of the existenceof Buckner Davis’ will; he ought to have examined it, and not relied upon the representation of the executor or of Christmas: if he had So examined, he would have seen, that the executors were but trustees, and could not, ample as their powers were, rightfully alienate the fund intrusted to them, but for the purposesof the
 
 *548
 
 trust. He ought to have called on Thomas H. Christmas to exhibitt0 him b*s to tbe slaves> if he had any; if he had, he .would have found that he occupied precisely the position t{le executors, and held the negroes, subject td the same trusts. Mr. Mitchell, then, has been guilty of such gross negligence, $s, in equity, renders him chargeable with notice of the equitable rights ofthe plaintiffs, andheholds theslaves in trust, for them. 1 Mad. Eq. 288.
 
 Scott
 
 v.
 
 Tyler,
 
 2 Dick, 725, with the exception of Leonidas Christmas, whose claim is barred by the statute of limitations. Peter Mitchell is not a trustee created by act of the parties, but declared so by equity, in which case the statute is a bar.
 
 Falls and others against Torrence,
 
 4 Haw. 412.
 
 Edwards
 
 v.
 
 The University,
 
 1 Dev.
 
 &
 
 Bat. 325.
 

 The defendant, Peter Mitchell, in his answer, calls upon the defendant, Peter R. Davis, to file two certain deeds executed to him by the plaintiff, Buckner Christmas. Two deeds have been filed by him, end we are to presume they are those called for. as no suggestion to the .contrary has been made_ We haye examined them, and find they have no effector bearing upqp .the case now before qs.
 

 There jnust b.e a reference to the Master, to take an account of the hires of the negroes in the possession of the defendant, Mitchell, and in taking said aepount. he will allow the defendant all just .charges for raising th.e young negroes, also the hire of Tom, to the time of bis sale, the price at which he sold, and the expenses incurred by the defendant in making jthe sale; the bill is dismissed as to White with costs.
 

 Cpn-JA)#, Pppree accordingly.