NORTH CAROLINA COTTON GROWERS CO-OPERATIVE ASSOCIATION
v. J. W. TILLERY.

(Filed 28 October, 1931.)

1. **Agriculture E c—In this case held: evidence failed to show that marketing association sold prior to time stipulated in contract.**

   In an action brought by the Cotton Coöperative Association against one of its members to recover an amount alleged to have been overpaid the member on his cotton, the member admitted the overpayment but set up a counterclaim alleging that the association was to sell his cotton in its "long pool" and that the discretion of the association was limited under the contract to selling in a period of time not less than four nor more than twenty-four months from date of delivery, and that the association sold prior to the expiration of the four months, resulting in loss to the member, but the only evidence introduced by the member in support of the counterclaim was the report of the average price of cotton during the period, *Held:* the evidence created only a conjecture or speculation as to whether the association had sold the cotton prior to the expiration of the four months, and a directed verdict for the plaintiff was not error.

2. **Appeal and Error J g—Where answer to one issue determines controversy exceptions relating to other issues are immaterial.**

   Where the verdict of the jury upon one issue determines the rights of the parties it is not necessary to consider exceptions relating to another issue, *Semble:* where a counterclaim setting up a separate and distinct cause of action is alleged in an amended answer the statute of limitations runs until the filing of the amended answer containing such new matter.

CIVIL ACTION, before *Moore, Special Judge,* at March Term, 1931, of WAKE.

It was alleged by the plaintiff and evidence was offered in support of the allegations, that during the year 1925 the defendant pooled a certain quantity of cotton with the plaintiff to be sold by the plaintiff in the same manner as the cotton of all other members was marketed. It was further alleged that in making settlement for the 1925 crop the plaintiff had overpaid the defendant in the sum of $5,097.90, and this action was instituted for recovery of such overpayment. The suit was instituted on 16 April, 1929. The defendant filed an answer in November, 1929, setting up a counterclaim, based upon the theory that the plaintiff in violation of the agreement to hold the cotton of defendant in the "long pool" sold the same in March, 1926, when the market was low, whereas, at a later date the price of cotton had increased to approximately twenty cents a pound, and that, as a result thereof, the defendant suffered a loss of a large amount of money by reason of failure of plaintiff to exercise reasonable diligence, skill and care in marketing

the crop of defendant member, and in violation of the agreement between the parties. Thereafter on 18 November, 1930, the defendant filed an amendment to the answer amending the counterclaim so as to claim damages for the failure of plaintiff to market the 1926 crop of cotton. To the amended answer the plaintiff filed a reply pleading the statute of limitations. At the trial the defendant admitted that he was indebted to the plaintiff in the sum of $5,097.90 and interest thereon, thus narrowing the controversy to a determination of the counterclaim set up in the amended answer. The evidence tended to show that on 3 December, 1926, the defendant, who was a member of plaintiff Market Association signed an agreement placing his cotton with the plaintiff and directing that his 1926 crop be placed in the "long pool," to be marketed in a period of time, probably six to twenty-four months in the discretion of the directors." The plaintiff sold the cotton from time to time, sending accounts of sale to the defendant, but it appears that the defendant lost these accounts or they were destroyed by fire. The cotton was shipped in September and on 22 July, 1927, the plaintiff sent a statement of the settlement to the defendant of the 1926 cotton crop. This statement shows that the cotton was sold in lots from time to time for various prices, the lowest price that any lot brought being apparently .1004 cents per pound and the highest price being apparently .1623 cents per pound. There was nothing to show the grade of the cotton except that 199 bales were below middling, and that the average price was thirty-three points below middling. The defendant attempted to prove the price of cotton by offering evidence of the average price of cotton during the various months of 1927 as shown by the tabulated report kept by Barbee and Company, cotton brokers of Raleigh. The defendant further offered a bulletin showing the monthly price for cotton for the year 1927, published by the Department of Agriculture of North Carolina.

The following issues were submitted to the jury:

1. "In what amount, if any, is the defendant indebted to the plaintiff by virtue of the matters alleged in the pleadings in this action?"

2. "In what amount, if any, is the plaintiff indebted to the defendant on his alleged counterclaim?"

3. "Is the defendant's alleged cause of action set out in his counterclaim barred by the statute of limitations?"

The trial judge instructed the jury to answer the second issue "nothing," and the third issue "yes."

From judgment upon the verdict the defendant appealed.

*Burgess & Baker and Biggs & Broughton for plaintiff.*
*E. L. Travis for defendant.*

BROGDEN, J. The contract between the parties with respect to the 1926 cotton crop of defendant specified that the cotton was to be placed in the "long pool," to be marketed in a period of time, probably six to twenty-four months in the discretion of the directors." The defendant contends that the "discretion of the directors" was limited by the language of the contract so that they could not sell in less than six months and must sell within twenty-four months. Conceding, though not deciding, that the interpretation of the contract urged by defendant, is correct, nevertheless it does not appear that the cotton was sold in less than six months from the time it was placed in the long pool. All the record discloses is that a final statement was submitted by the plaintiff to defendant on 22 July, 1927. Hence it necessarily follows that the cotton was sold sometime prior to that date.

The defendant, however, undertakes to establish the date of sale by attempting to offer evidence showing either the average price of cotton during the year 1927 on certain dates, or the monthly price of cotton during the year 1927, but such proof, at most, raises a haze of conjecture and a fog of speculation, and does not constitute evidence of the necessary and vital facts. Therefore, the instruction given by the trial judge on the second issue was correct.

As the ruling upon the second issue determines the merit of the controversy, it is not deemed necessary to decide whether the defendant's counterclaim, set up in the amended answer, for damages sustained by the negligent handling of the 1926 crop, is barred by the statute of limitations. It is said in 37 C. J., page 1082, section 522, that: "Where a counterclaim or set-off is pleaded in an amended answer or plea, and not in the original, the statute runs against it until the filing of the amended answer." This declaration of law finds direct and unequivocal support in *Christmas v. Mitchell,* 38 N. C., 535; *Gill v. Young,* 88 N. C., 58; *Hester v. Mullen,* 107 N. C., 724, 12 S. E., 447, and *Sams v. Price,* 121 N. C., 392, 28 S. E., 486. The theory upon which the decisions turn is that the amendment introduces a separate and distinct cause of action and such cause of action so alleged is subject to any and all legal defenses that the adverse party may interpose, including the statute of limitations. See, also, *R. R. v. Dill,* 171 N. C., 176, 88 S. E., 144; *Jones v. Vanstory,* 200 N. C., 582. Implications to the contrary may be deduced from *Brumble v. Brown,* 71 N. C., 513.

No error.