FREDERICK A. LAWRENCE and others, Appellants, *v.* THE BANK OF THE REPUBLIC, Respondent.

A judgment creditor is a necessary party to a creditor's suit, instituted to set aside a prior assignment made for the benefit of creditors, on the ground of fraud.

A sheriff cannot institute a creditor's suit to reach the proceeds of the assigned property, that they may be applied on an execution in his hands.

The proceeds of the sale by the assignees of such assigned property, are not subject to levy and sale on execution.

Such proceeds may sometimes be pursued, and the holder thereof be turned into a trustee for the benefit of creditors; and proper parties may bring an action against the debtor and his assignees for such purpose; but the sheriff is not such a party.

THE plaintiffs sued the bank, to recover a debt due them for moneys they had deposited to their credit as assignees of Lanes, Boice & Co.

The bank put in an answer, setting up the fact that the assignors of the plaintiffs owed the bank; to recover which, the bank commenced an action in the Supreme Court, in which an attachment was procured under the 227th section of the Code of Procedure, upon the ground that Lanes, Boice & Co., the assignors, had assigned their property to defraud creditors, and that the sheriff had executed the attachment on, and attached, the funds standing upon the books of the bank to the credit of the plaintiffs in this action.

It was further stated in the answer that the bank recovered a judgment against Lanes, Boice & Co. for over $128,000 in the attachment suit; that an execution had been issued upon the judgment and duly returned *nulla bona.* The defendants thereupon insisted that they had a right to apply the moneys deposited by the plaintiffs in their bank, as part payment of the aforementioned judgment; and insisted upon this right by way of *offset* or *counterclaim.* This action was tried in the Superior Court of New York before a jury, and under the direction of the court they found for the plaintiffs the amount due them from the bank; the judge having over-ruled the defense, when offered in evidence.

Judgment having been entered upon the verdict, the defendant appealed to the General Term of that court, which made an order reversing the judgment and granting a new trial, with costs to abide the event.

The plaintiffs appeal from that order to this court.

*J. Larocque,* for the appellants.

*Thos. H. Rodman,* for the respondent.

MORGAN, J.   In my opinion, the Bank of the Republic is not entitled to retain the moneys of the plaintiffs to satisfy its judgment against the assignors.

It is conceded, in the opinion of the court below, that the sheriff acquired no lien upon the funds by the service of the attachment.  *In equity,* perhaps, the bank may be adjudged to hold the proceeds of the assigned property in trust for creditors; but at law, the bank is the debtor of these plaintiffs in respect to such funds.

The sheriff may, doubtless, attach any property which was transferred to the plaintiffs by the alleged fraudulent assignment, and hold it subject to the decision of the court upon the question of fraud.  But, in such a case, he must defend the seizure in behalf of the creditors, and show that the assignment was fraudulent as to the plaintiffs' debt.  As to creditors, the title to such property does not pass, if the assignment is fraudulent, but is liable to seizure to satisfy the plaintiffs' debt.

The case is, however, different when the assigned property has been sold by the assignees, and its identity gone.  The proceeds cannot be attached or levied upon by the sheriff as the debtor's property.  Setting aside the assignment simply, would not vest the title to such proceeds in the debtors.

The only remedy of the creditor, in such a case, is for him to institute a creditor's suit, and fasten a *trust* upon such proceeds for the benefit of creditors; which, necessarily, confirms the legal title of the assignees to the assigned property, instead of annulling it, as would be the case if the sheriff had seized the assigned property, instead of the proceeds.

The various provisions of the Code, in relation to attachments, are in harmony with these views. By section 227, an attachment may issue when the debtor has assigned his property with intent to defraud his creditors. The right of the sheriff to hold it depends upon his establishing the fraud as against the creditor in whose behalf he has attached it. By section 232, the sheriff is authorized, subject to the direction of the court, to collect and receive into his possession all debts, credits and effects of the defendant; and, for that purpose, to bring suits in his or the defendant's name. Certainly, there is no authority given in this section to bring a creditor's suit to reach the proceeds of the assigned property. The sheriff can only bring such action as the defendant himself could bring, but for the assignment, except as against those who subsequently intermeddle with the property already attached by him. He cannot bring a suit to subject property to an attachment which could not be otherwise attached. And by section 234, the attachment may be levied upon the right or shares of the defendant in the stock of any association or corporation, and all other property of such defendant in this State; and by section 237, the sheriff is required to satisfy the judgment, if one is obtained, *out of the property attached by him.*

It is clear to my mind that the sheriff has no standing in court to institute a creditor's suit to reach the proceeds of assigned property for the benefit of creditors, which he could not otherwise attach as the debtor's property. The attachment suit may, therefore, be considered as of no consequence in the defense of this action.

The other ground upon which the defense is based is, I think, equally untenable. It may be conceded that creditors could reach the funds by a creditor's suit, upon the theory that the assignees hold them in trust for creditors, by reason of fraud in the assignment. A court of equity, in cases of fraud, follows the proceeds of the debtor's property, and affords a remedy by turning the legal owner of the funds into a trustee for the benefit of creditors. Such a suit lies against the judgment debtor and his assignees. An injunction may be obtained

against the assignees to restrain them from disposing of the funds, if there is any danger of their insolvency; although the institution of the suit itself would create a lien upon the funds which would be sufficient as against the assignees.

But here the assignees have not got the funds: on the contrary, the defendants have them in their custody, and attempt to withhold them before they have obtained any lien upon them by action or otherwise. The defendants' counterclaim, then, comes to this: that, inasmuch as they have a right to commence a creditor's suit and obtain a lien, the funds may be detained from the plaintiffs, in anticipation of such lien. There is no more propriety in this than there would be in allowing a bailee of personal property to refuse to deliver it up to the owner on demand; because the owner owed him a debt for which the property might be subsequently attached.

When this action was commenced, the defendants were clearly liable in debt for the funds which the plaintiffs had deposited in their bank, for at that precise time it is admitted they had acquired no lien upon these funds by the institution of a creditor's suit.

Now, when, in the progress of this action, did the defendants become entitled to retain these funds? The theory of the defense is, that, by their answer, they take the position of plaintiffs in a creditor's suit; and to follow out the analogy, it must be inferred that, by the service of their answer, they acquired a lien in the same manner as they would have acquired it by the institution of a creditor's suit.

The answer, it is said, contained a counterclaim in the nature of a complaint in a creditor's suit. There is something specious in this reasoning, but it strikes the legal mind as a very novel proposition.

1. I am of the opinion that a lien of the character mentioned cannot be acquired by a defendant, merely by putting in an answer which shows that he is in a situation to institute a creditor's suit, through which he might ultimately be able to reach the debt sued for.

Such a defense is in the nature of an equitable set-off; and it is not claimed that it can be sustained upon that ground.

2. I am also of the opinion that the proper parties are not before the court to litigate the question. In a creditor's suit against a judgment debtor, to set aside a prior assignment made by him in trust for the benefit of creditors, on the ground of fraud, he is a necessary party. Indeed, he must be deemed the principal party, otherwise different persons, claiming portions of the assignee's property, could not be joined as defendants. The common point of litigation is the alleged fraudulent transfer of the property. (*Fellows* v. *Fellows*, 4 Cow., 682.)

3. It is said that such a defense is authorized by the Code, to prevent circuity of action. However desirable it may be to settle in one suit all the controversies between the parties which relate to the same subject matter, it is not proper to disregard the well-settled forms of action to accomplish such a result, except when the statute plainly furnishes a new form of remedy. It is safer to abide by the old landmarks of the law, than to try experiments in the expectation of finding a shorter road to the temple of justice.

4. The Code does not, I think, authorize such a defense by way of counterclaim.

It provides that a defendant may interpose a defense constituting a counterclaim, provided such claim exists in favor of the defendant and against the plaintiff, and grows out of the plaintiff's claim, or is connected with the *subject matter* of the action. (§§ 149, 150.)

The defendant's claim, even if it could be regarded as existing against the plaintiffs, is not connected with the subject matter of the action. It did not grow out of it or arise out of the same transaction, as between these parties. The *subject* of this suit is a debt, which the defendants owed to the plaintiffs; and when recovered, the funds are just as liable to be subjected to the satisfaction of the defendant's judgment against the assignors as before. The recovery of the debt in no sense changes the rights of the parties; but leaves the plaintiffs to be proceeded against by other judgment creditors as well as the defendants, without the embarrassment of having the funds put beyond their reach, by a

summary confiscation, for the benefit of these defendants. In case some other judgment creditor had first commenced a suit against the assignors and assignees to reach the proceeds of the assigned property, it would be a novel proceeding to interpose that fact by way of reply to avoid the counterclaim of these defendants.

It is very evident that a recovery by the plaintiffs in this action will not change the character of the funds in question, nor will it hinder or impair any remedy which the defendants or other judgment creditors may have, to reach them by any of the ordinary forms of action or proceeding which have been hitherto used for such purposes.

The plaintiffs have an undoubted right, as against the defendants, to the custody of the funds, until the assignment is set aside by action in a court of justice, in which action the assignees may be restrained from disposing of them; but there is no way by which the judgment creditors can have the use of them in the mean time.

The order of the General Term of the Superior Court should be reversed, with costs, and the judgment entered upon the verdict affirmed.

Concurring, PORTER, HUNT, SMITH and LEONARD, JJ.; PECKHAM and WRIGHT, JJ., not voting; DAVIES, Ch. J., for affirmance.

Judgment reversed.