## SPRINKLE v. WELLBORN.

(Filed December 5, 1905).

*Deeds—Mental Incapacity—Fraud—Innocent Purchaser—
Fraudulent Vendee—Contracts of Lunatics—Presumption
of Fraud — Relief Discretionary — Remedy — Issues —
Harmless Error—Argument of Counsel—Evidence—Prac-
tice—Capacity to Contract.*

1.  In an action to set aside a deed for mental incapacity and fraud,
    under a finding that one of the defendants was a purchaser from
    his co-defendant for value and without notice of the mental
    incapacity of the grantor, and also without notice of any fraud of
    his co-defendant in procuring the deed, the plaintiff could not
    proceed further against such defendant and the cause was properly
    continued against the other defendant upon the theory that he is
    liable for the value of the land, less the amount paid by him
    therefor.

2.  The contracts of idiots, lunatics and other persons *non compos* are
    generally regarded, in a certain sense, as invalid.

3.  In regard to a contract entered into by a person apparently sane,
    before the fact of insanity has been established, such a contract
    is at most only voidable and will not be set aside when the other
    party to be affected by the decree of the court had no notice
    of the fact of insanity, has derived no inequitable advantage, and
    the parties cannot be placed *in statu quo.*

4.  The mere fact that a man is of weak understanding, is not of itself
    an adequate ground to defeat the enforcement of an executory
    contract, or to set aside an executed agreement or conveyance.
    But where mental weakness is accompanied by other inequitable
    incidents—such as undue influence, great ignorance and want of
    advice, or inadequacy of consideration—equity will interfere and
    grant either affirmative or defensive relief.

5.  In the case of an insane person, one wholly incompetent to con-
    tract, the law presumes fraud from the condition of the parties,
    the presumption being stronger or weaker, according to the posi-
    tion or condition of the parties with respect to each other.

SPRINKLE *v.* WELLBORN.

6. A presumption of fraud is raised from a transaction with a person *non compos mentis*, without the aid of any evidence of actual imposition, by the very nature of the transaction.

7. In an action to set aside a deed for mental incapacity and for fraud, the finding of the jury that the grantor did not have sufficient mental capacity and that the grantee had notice of this fact, is sufficient to invest the court with the power and to induce it to set aside the deed, if no real injustice is done to the grantee and no superior equity has intervened in favor of a third party, the granting of the relief resting in the sound discretion of the court.

8. The remedy of a vendor is not defeated where the fraudulent vendee has sold the property to an innocent purchaser, for in such case the proceeds of the sale are as available as the property itself. The fraudulent vendee becomes chargeable with the proceeds received from the innocent purchaser, but the property itself is not, and a personal judgment may be obtained against him.

9. In an action to set aside a deed for mental incapacity and for fraud where the jury found that there was not only a want of mental capacity, but that defendant knew of it and that he obtained the land at an under-value, an issue as to fraud was not essential to warrant a judgment against the defendant for the difference between the price for the land and its value, and the action of the court in striking out the answer of the jury to the issue as to fraud and substituting one of its own resulted in no legal wrong to the defendant.

10. The court had the power to set aside the verdict of the jury, but it had no power to reverse the answer of the jury. As the judgment is not affected by this action, it is not reversible error and the case is left as if that issue had not been submitted.

11. Where evidence was introduced for the consideration of the court alone and this was fully explained to the jury, the fact that counsel commented upon it, cannot be made the ground for exception now, where no objection was made at the time.

12. In an action to set aside a deed for mental incapacity, the record in the case in which plaintiff's marriage was annulled on the ground that she did not have sufficient mental capacity to enter into the contract of marriage was incompetent as substantive testimony and properly excluded.

13. A judge is not obliged to repeat instructions already given, even when especially asked to do so in a prayer.

14. A person has mental capacity sufficient to contract if he knows what he is about and the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, not that he should be able to act wisely or discreetly nor to drive a good bargain, but he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly.

15. Where an issue has been eliminated from the case by the verdict upon other issues, any error committed as to instructions relating to such issue was harmless.

16. In an action to set aside a verdict for mental incapacity, where it appears that the defendant was a kinsman and neighbor of the grantor and had known her all his life, and that at the time she made the trade with him, she was wild and hardly seemed to know her whereabouts, that he procured the deed away from her home, having taken her away from those who could have advised her and falsely stated that he was going on another matter, that she suddenly changed her mind and was so weak as to be completely subjected to his power and dictation, *held*, this evidence is sufficient to support the finding that the defendant had notice of the grantor's incapacity at the time she made the deed to him, the jury not being bound by his statement that he did not know she was insane.

ACTION by Nancy E. Sprinkle, by her Guardian, W. R. Sprinkle, and others, against J. M. Wellborn and T. J. Greenwood, heard by *Judge Chas. M. Cooke* and a jury, at the June Term, 1905, of the Superior Court of WILKES.

This action was brought by the plaintiff, Nancy Elvira Sprinkle, who is represented by her guardian, W. R. Sprinkle, against the defendant, J. M. Wellborn, to set aside a deed made by the said Nancy Elvira Sprinkle to the defendant Wellborn on the 19th day of October, 1886, for want of mental capacity to make the same and for fraud and undue influence in procuring the execution of the said deed. Issues were submitted to the jury which, with the answers thereto,

are as follows: "(1) Did Nancy E. Sprinkle, at the time of executing the deed of October 19, 1886, have sufficient mental capacity to make the same? A. No. (2) If Nancy E. Sprinkle had not sufficient mental capacity at such time to make such deed, did J. M. Wellborn have notice of it? A. Yes. (3) Was any fraud or undue influence practiced on Nancy E. Sprinkle by J. M. Wellborn, to induce her to make such deed? A. No. (4) What was the amount of the benefit derived by Nancy E. Sprinkle from the consideration for the deed to the River Farm? A. (by consent) $1,299 (the amount of the Salmons mortgage debt), the value of the Mountain or Miller tract of land, the value of the cattle delivered to her, and all as of date October 19, 1886. (5) What was the value of the River Farm, October 19, 1886? A. $4,000. (6) What has been the average annual rental value of said River Farm since October 19, 1886? A. $200. (7) What was the value of the Mountain or Miller tract October 19, 1886? A. $1,500. (8) What has been the average rental value of said Mountain or Miller tract since October 19, 1886? A. $75. (9) What was the value of the cattle received by Nancy E. Sprinkle in said trade? A. $75. (10) If the said Nancy E. Sprinkle had not sufficient mental capacity to make said deed, did the defendant Greenwood have notice thereof? A. (by consent) No. (11) Was the defendant Greenwood a purchaser for value without notice of any fraud on the part of Wellborn to procure the deed to himself, if any such was practiced? A. (by consent) Yes." There was no objection to the issues. It is not necessary to state the evidence. It was voluminous, but the only material portion of it will be stated in the opinion.

The defendant requested the court to give a number of instructions, all of which were given except those numbered 3, 13 and 14, which will be noticed hereafter. The material instructions given in response to the defendant's prayers, upon the issue as to mental capacity, were as follows: "1.

The law fixes no particular standard of intelligence necessary to be possessed by parties in making a contract, and although a person may not have sufficient intelligence to manage his affairs in a proper and prudent manner, still he may be capable of making a binding contract. 2. It is not required that a person should be able to make a disposition of his property with judgment and discretion. It is sufficient if he understands what he is about. If a person knows what he is doing and is aware of the nature of the particular transaction, such person has sufficient mental capacity to make a contract, although that person may not act wisely or discreetly, or make a good bargain. 3. If the jury find from the evidence that on the 19th of October, 1886, Nancy E. Sprinkle had sufficient mental capacity to understand what she was about and the nature and extent of the property when she executed the deed, and that she understood the nature and effect thereof, they will answer the first issue yes, although they also find from the evidence that she was eccentric and that her mind was weak and flighty and that the trade she made was not a prudent one and was not made in the exercise of discretion and good judgment. 4. If the jury find from the evidence that at the time the deed was executed, to-wit, October 19, 1886, Nancy E. Sprinkle had sufficient mental capacity to understand and appreciate that she was making a deed by which she passed the title to the River Farm to the defendant Wellborn, that she was depriving herself of the ownership and control thereof, and that she was getting in exchange therefor the farm in Ashe County and the cattle mentioned in the evidence, and that the mortgage to Salmons was to be paid by the defendant, then they will answer the first issue yes, although they may also find that it was not a prudent trade and was not made with discretion and good judgment. 5. Mere weakness of mind and susceptibility to undue or fraudulent influences, however clearly shown, will not vitiate a contract unless it was induced

by fraud. Where there is a legal capacity there cannot be an equitable incapacity apart from fraud. If a person be of sound mind, he has the right to dispose of his property, and his will stands in place of a reason, provided the contract justified the conclusion that he exercised deliberate judgment such as it is and has not been circumvented or imposed upon by artifice or undue influence which amounts to fraud." The following instructions, which the defendant requested the court to give the jury, were refused: "1. Unless the mind of such person is wholly incapable of any reflection or deliberate act so that in fact he was unaware of the nature and effect of the particular transaction, such person in the eye of the law has sufficient mental capacity to make a contract. 2. Upon all of the evidence, the jury is instructed that the defendant Wellborn did not have notice of any mental incapacity of Nancy E. Sprinkle, if any such existed. 3. The jury will answer the third issue no." The court then charged the jury generally as follows: "Those who allege insanity, idiocy, imbecility and incapacity must prove it by the greater weight of the evidence; must overcome the legal presumpton of soundness of mind. Has the plaintiff overcome this presumption of law? If so, you will answer the first issue no, and thereby declare that, when she made the deed, Elvira Sprinkle did not have that mental capacity which the law requires of those who dispose of their property. The law does not require that a person be able to dispose of his or her property with judgment and discretion, or be able to get the best of a trade. It is sufficient in law if he or she understands what he or she is doing and what they are about. The law does not require a high degree of intelligence, but it does require sufficient mind to know and comprehend the character of the act and to know what one is doing. Did Elvira Sprinkle, when she made the deed to the River Farm, know what she was about; know the effect of the instrument she was signing; know that she was parting with her land

and getting the land in Ashe County and the cattle and the payment of the mortgage in return? If she did not fully comprehend this, you will answer the issue no; otherwise you will answer it yes. You understand, of course, that you are inquiring into the contract of Elvira Sprinkle on October 19, 1886. Was she sound then and of sufficient mental capacity to make the deed on that day? Where one has sufficient mental capacity at the time he signs the deed to understand the nature and extent of the property disposed of, and the force and effect of his act in signing the deed, then he is capable of executing a deed. If you find that Nancy Sprinkle, at the time she signed the deed on the 19th October, 1886, had mind and intelligence sufficient to enable her to have a reasonable judgment of the kind and value of the property embraced in the deed, and to understand the effect of her act in making the deed, you should answer the first issue yes. But if you shall find that she did not have such mind and intelligence as stated, you will answer the first issue no."

The court instructed the jury on the law applicable to the other issues, recapitulating the evidence by grouping the same as applicable to the different issues, and explained the law arising thereon. The court instructed the jury as to the difference between substantive evidence and corroborating and impeaching evidence, and then instructed them further as follows: "The evidence of statements made in this case, by witnesses other than the parties to this suit, different from and inconsistent with the testimony given by such witnesses on this trial, was allowed only for the purpose of impeaching such witnesses, and is not to be considered as substantive evidence. Evidence of the statements of witnesses, which accord with their evidence on the trial, is only allowed for the purpose of corroborating such witnesses, and is not to be considered by the jury as substantive evidence." After the verdict was returned, the court found that the answer of the

jury to the third issue was against the weight of the evidence, and set it aside; and that, upon the responses to the other issues, there was fraud in law. The court thereupon answered the third issue "Yes." The defendant excepted. During the trial the plaintiff introduced in evidence the record entitled, "In the Matter of the Inqury into the Mental Condition of Nancy E. Sprinkle," which was a proceeding instituted in 1893, under the statute, the record showing the appointment of W. R. Sprinkle as her guardian. In the said proceeding, the jury found that she was "incompetent to manage her own business." The plaintiff then introduced the record in the case of *Nancy Sims, by her Guardian, v. W. M. Sims,* in which her marriage to the defendant was annulled by a judgment of the court based upon the verdict of a jury that she did not have sufficient mental capacity to enter into the contract of marriage. The records were each duly objected to by the defendant. The objections were overruled and the defendant excepted. The records were offered solely for the consideration of the court, and in respect to them the following facts are stated: "The court held that these records were admitted only for the purpose of consideration by the court upon the question whether or not the defendant Wellborn was competent to testify as to the conversations and transactions between himself and the plaintiff—the objection to his competency being that she was now a lunatic, and the court so stated in the presence of the jury."

The defendant then introduced the record of the second inquiry into the sanity of Nancy Sims, dated August, 1895, in which the jury found that she was sane and "competent to transact the ordinary business of life." The plaintiffs contended that the records they introduced should be admitted as evidence for the jury to consider, and the defendants insisted that the records they introduced should be admitted in the same way. The judge excluded all the records as evidence for the jury, but stated that if he should

decide later to admit the records as evidence, he would so announce. The court did not decide to admit them as evidence. The defendant then read the deposition of Governor Glenn. After the close of the evidence and while one of the counsel was addressing the jury, an attorney for the plaintiff came up to the bench and said to the judge that as Governor Glenn's deposition had been introduced, he thought the court ought to allow the records to go to the jury as evidence, and wanted to know if the court would let him argue to the jury that they were evidence. The court said no, that those records were not in evidence, and that he must not refer to them in argument. The judge was engaged, during the arguments, in preparing instructions and considering the prayers for instruction handed up to him just before the argument commenced, and did not pay any attention to the arguments of counsel, and did not know until after the verdict had been rendered, that counsel in their arguments had referred to the said records as evidence; but the court finds, after hearing the evidence of the attorneys, that one of the four attorneys for the plaintiff who addressed the jury (but not the one referred to above), in his argument, did refer to the said records as evidence, and that the attorneys for the defendant also in their reply referred to the said records as evidence and discussed the same. The attention of the court was not called to this, nor any objection made to it during the argument; but the defendant, after verdict, called the court's attention to it, and moved to set aside the verdict on that ground. The counsel for the plaintiff, who referred to the records as evidence, had not been advised of what the court had said to his associate, neither had the counsel for the defendant.

There was a motion for a new trial based upon errors committed during the progress of the trial and objections to the argument of counsel, as appears in the finding of the court, which motion was overruled. Judgment for the plaintiff and the defendant appealed.

*Shepherd & Shepherd* and *T. B. Finley* for the plaintiff.
*W. W. Barber, R. A. Doughton* and *Manly & Hendren*
for the defendant.

WALKER, J., after stating the case: The jury found in
this case, by consent, in their answers to the 10th and 11th
issues, that the defendant, T. J. Greenwood, had purchased
the land in controversy for value and without notice of the
mental incapacity of Nancy Elvira Sprinkle, and also with-
out notice of any fraud of Wellborn, if there was any, in
procuring the deed. Counsel for the plaintiff properly
admitted that, under this finding, they could not proceed fur-
ther against Greenwood, and the cause was therefore con-
tinued against Wellborn on the theory that, upon the verdict,
he is liable for the value of the land, less the amount paid by
him therefor, and for the difference between these two
amounts, judgment was rendered in the court below. There
is no serious contention, as we understand, that the defend-
ant is not so liable, if the rulings of the court, as to all
issues except the third, and consequently the verdict and the
judgment, are free from error and can be sustained, though
it was suggested that the liability was not so clearly apparent
as to be conceded or taken for granted, without any good rea-
son given or any authority cited to establish it. We will, there-
fore, consider this question before passing to the discussion
of the other matters. The first essential element of a con-
tract is consent, and there can be no true agreement without
the capacity to understand it and freedom to accept or to
reject the terms proposed. The parties must be able and
willing to contract. If, therefore, one person induces
another, who lacks this capacity or this freedom, to enter
into an apparent contract, equity will not recognize the
transaction, however, as one author says, it may be fenced
by formal observances, but deeming it fraudulent, will in
proper cases afford relief against it at the suit of the party

imposed upon. Fetter on Equity, 143. On this ground the contracts of idiots, lunatics and other persons *non compos mentis* are generally regarded, in a certain sense, as invalid. It has been said by many courts that the contracts of a lunatic made after the fact of insanity has been judicially ascertained, are absolutely void and that he can have no power to contract at all until there is a reversal of the finding and he is permitted to resume control of his property. Fetter, 143; *Odom v. Riddick,* 104 N. C., 515. We need not decide what is the law in this respect, as there had been no inquisition of lunacy at the time the deed in this case was executed. We will have occasion, though, to advert to the nature and effect of such an inquisition hereafter in discussing another question. In regard to a contract entered into by a person apparently sane, before the fact of insanity has been judicially established, the law is well settled, we believe, that such contracts are at most only voidable and will not be set aside when the other party to be affected by the decree of the court had no notice of the fact of insanity, has derived no inequitable advantage and the parties cannot be placed *in statu quo.* The reason for this distinction between contracts made when there has been office found and those when there has not, is said by the authorities to be plain. "Insanity is one of the most mysterious diseases to which humanity is subject. The ripest professional skill and the keenest observation sometimes fail to detect it in its incipient stages. Sound law and good morals, therefore, alike forbid the rescission of a contract on the ground of insanity by one who is unable or unwilling to restore the property acquired thereunder to the other party, who entered into it in good faith, in entire ignorance of the insanity, and without taking any advantage by reason thereof." Fetter on Equity, pp. 143, 144; Eaton on Equity, 316. "The mere fact that a man is of weak understanding, or is below the average of mankind in intellectual capacity, is not of itself an adequate ground

to defeat the enforcement of an executory contract, or to set aside an executed agreement or conveyance. But where mental weakness is accompanied by other inequitable incidents—such as undue influence, great ignorance and want of advice, or inadequacy of consideration—equity will interfere and grant either affirmative or defensive relief." Eaton on Equity, p. 317. In the case of an insane person, one wholly incompetent to contract, the law presumes fraud from the condition of the parties, the same as it does in the case of a contract of a person under duress or undue influence, or of contracts between persons occupying a fiduciary relation. The presumption is stronger or weaker according to the position or condition of the parties with respect to each other. Fraud vitiates all contracts, but, as a general rule, it is not presumed but must be proved. Proof is not dispensed with, but there are certain well defined relations as there are certain facts when established, from which the law presumes fraud and which, though not necessarily binding upon the jury, may answer as plenary proof of the fraud unless the innocence of the party charged with its commission in some way appears. *Lee v. Pearce,* 68 N. C., 76.

In the classification of frauds, of which a court of equity takes cognizance, the kind which is said to be presumed from a transaction with a lunatic is to be referred to the well known head of constructive frauds. Eaton's Equity, 314. *Lord Hardwicke,* for the purpose of convenient consideration, divided the subject of fraud into four classes: "1. Fraud arising from the facts and circumstances of imposition. 2. Fraud arising from the intrinsic matter of the bargain itself. 3. Fraud presumed from the circumstances and condition of the parties contracting. 4. Fraud affecting third persons not parties to the transaction." *Earl of Chesterfield v. Janssen,* 2 Ves. Sr., 125. This classification has generally been adopted.

Our case falls under the third head, as does also a contract

with a person so far drunk that he is substantially *non compos mentis* and not capable of apprehending the effect of what he does.   The presumption is raised without the aid of any evidence of actual imposition, from the very nature of the transaction.   Adams' Eq. (5 Am. Ed.), sec. 182, pp. 364, 365; Bispham (3 Ed.), sec. 230; Eaton and Fetter, *supra;* *Odom v. Riddick, supra; Cameron v. Power Co.,* 138 N. C., 365.   *Lord Hardwicke,* in the case from Vesey, we have cited, says: "A third kind of fraud is that which may be presumed from the circumstances and conditions of the parties contracting; and this goes further than the rule of law, which is that it must be proved, and not presumed; but it is wisely established in this court to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do is equally against conscience as to take advantage of his ignorance."   It results from these authorities, if we bring the facts of this case to the test of the principles stated in them, that the finding of the jury upon the first and second issues was quite sufficient to invest the court with the power and to induce it to set aside the deed to Wellborn, if no real injustice is thereby done to him and no superior equity has intervened in favor of a third party, for the plaintiff is not entitled to rescission and cancellation as matter of right, because the granting of that relief rests in the sound discretion of the court and it will not decree such relief if it will work any injustice in the particular case. Bispham's Eq., sec. 475.   The equity will not always be enforced, for instance, in a case where the *status quo ante* as stated and illustrated in *Odom v. Riddick, supra,* cannot be fully restored.   No such consideration though is present in this case, as the very nature of the particular relief which is sought will permit the administration of such equitable relief with even and exact justice to all parties.   Greenwood is found to be a purchaser for value and without notice and is entitled to the special favor and protection of a court of

equity.   The deed to him must be upheld as effectual to vest
a good and indefeasible title, not only as against his vendor,
but also as against the plaintiffs, for his equity is superior to
theirs.   But this does not deprive the plaintiffs of all relief.
It is a familiar principle that when a fraudulent vendee has
conveyed the property in question to a third party who, by
reason of his innocence, acquires a good and valid title as
against the equity of the original vendor, the latter has a
remedy against the substituted property, in this case the purchase money received from Greenwood, and the defendant
will be held liable for the amount thereof subject to any deductions for sums paid to the plaintiff at the time the deed was
made and to any other payments rightfully made by him
to protect the title, such as the one made in this case to disincumber the land.   Upon this principle was the judgment
of the court rendered, and we think that it works out the
equity of the plaintiff and at the same time does full justice
to the defendant.   In this respect, this case is unlike that of
*Odom v. Riddick.*   That the plaintiff was entitled to proceed against the defendant for a personal judgment is settled
by the highest authority.   *Smith,* in his admirable Treatise
on the Equitable Remedies of Creditors, at pp. 28 and 29,
when speaking of a fraudulent conveyance, says: "(1) The
remedy of a creditor is not defeated where the fraudulent
grantee has sold the property to an innocent purchaser, for
in such case the proceeds of the sale are as available as the
property itself.   The fraudulent grantee becomes chargeable
with the proceeds derived from the innocent purchaser, but
the property itself is not.   (2) It is not essential that the
precise property fraudulently conveyed shall remain in the
hands of the fraudulent grantee to entitle the plaintiff to a
recovery.   Thus, the grantee may have exchanged the fraudulently conveyed property for other property still held by him,
in which case the fraud will be impressed upon the latter
property in lieu of the former.   (3) Where it is sought to

follow property fraudulently conveyed and procure a decree against the property, which is subsequently reversed, complainants are not precluded from taking a different course and procuring a different decree based on the evidence on final hearing, such as a personal decree against the fraudulent grantee." See also 1 Pom. Eq. Jur. (1905), sec. 237, and 240. In *Texas v. Hardenberg,* 77 U. S. (10 Wall.), 68, *Chase, C. J.,* for the court, says: "It may be admitted that these allegations and interrogatories do not assert the right of the complainant to the proceeds with absolute directness and distinctness. The bill might have been drawn better. But we think it would savor of extreme technicality to refuse to see in the bill enough in relation to the proceeds of the bonds to warrant relief in this respect under the general prayer. Willing to allow this defendant the benefit of any defense consistent with the rules which govern proceedings in equity, we have looked into the question as if it were still open. Having thus looked into it, we find no sufficient ground for altering the conclusion embodied in the decree." The last expression of the court refers to a clause in the decree awarding a recovery of the proceeds of the bonds which had been sold. *Jones v. Van Doren,* 130 U. S., 684. (The rule, and the reason for it, are clearly and tersely stated by *Earl, J.,* in *Murtha v. Curley,* 90 N. Y., at 378: "A court of equity adapts its relief to the exigencies of the case in hand. It may restrain or compel the defendant; it may appoint a receiver, or order an accounting; it may decree specific performance, or order the delivery to the plaintiff of specific real or personal property; or it may order a sum of money to be paid to the plaintiff, and give him a personal judgment therefor." When the property has been converted, as in this case, there is no longer any need for a decree vacating the fraudulent deed, but the court will simply declare that the deed is void as between the plaintiff (Nancy Sprinkle) and her fraudulent grantee and award such relief as is proper

in the premises.  Wellborn, having sold the land to a *bona fide* purchaser, and thereby deprived his vendor of the land itself and, having received the price, he must, by reason of his fraudulent disposition of property which he is considered to have held in trust and of its conversion into money, be held responsible for the amount of the consideration paid to him.  The money in his hands stands for the land.  Wait Fraud. Conv. (3 Ed.), sec. 178; *Holland v. Anderson,* 38 Mo., 55; *Lawrence v. Bank,* 35 N. Y.; 320; *Dilworth v. Carts,* 139 Ill., 508; *Hazen v. Bank,* 70 Vt., 543.  But the administration of this relief is eminently proper under the reformed procedure, where the rights of parties are settled and determined in one action, the distinction between actions at law and suits in equity having been abolished.  1 Pom. Eq. Jur., sec. 242.  Our conclusion, therefore, is that by the verdict of the jury upon the issues, excluding altogether the third issue, the plaintiffs were entitled to the relief which was adjudged to them.  The third issue was submitted only to ascertain whether there had been any actual fraud or undue influence used to obtain the deed, should the jury have found that Nancy Sprinkle was not insane, that is devoid of all mental capacity, but merely weak-minded and an easy prey to the domination and overruling influence of the defendant, who availed himself of her weakness and of his power over her to secure the execution of the deed to himself by undue means, thus presenting an alternative equity for the rescission and cancellation of the deed.  The issue was in no way essential to the relief granted, as the jury found not only that there was want of sufficient mental capacity, but that the defendant knew of it, at the time he got the deed, and in addition thereto that he obtained the land at an under-value.  It seems to us that it would be a reproach to the law and to the administration of justice under its forms, if such a transaction were permitted to stand.  But we do not think there can be found in the

books any principle which would cause us to hesitate in the least, so far as this objection is concerned, to pronounce its condemnation and to sustain the judgment of the court, which requires the defendant to surrender any gain or benefit he has derived from it.

It follows from what we have already determined, that the action of His Honor in striking out the answer of the jury to the third issue and substituting one of his own, has resulted in no legal wrong to the defendant, which requires a reversal or even a modification of the judgment. There was error in doing so, but not reversible error. The court had the power to set aside the verdict, as to that issue, that is *pro tanto*, but none to reverse the answer of the jury. This was an invasion of their province, but the defendant cannot complain of it as it worked no material injury in law to him. The order setting aside the verdict upon that issue is sustained, as the court merely exercised its discretion to that extent, but in other respects it is reversed and the answer of the court to that issue will be expunged. That is but just to the defendant. The court, as it appears in the record, was induced to take the course it did under the belief that, as the answers to other issues showed, "fraud in law," the proper answer to the third issue should be an affirmative one. In this there was error, as we have said, but the judgment is not affected by it, and the case is left as if that issue had not been submitted at all.

The objection to the records of the inquisition of lunacy is untenable. The case shows that they were introduced for the consideration of the court alone, in order to decide upon the competency of a witness, and this was fully explained to the jury. If counsel of plaintiff commented upon them, no objection was made at the time and, not having been made then, it cannot be made now. *State v. Tyson*, 133 N. C., 692; *Horah v. Knox*, 87 N. C., 483. Besides, the defendant's counsel, instead of calling the court's attention to those

comments, replied to them himself, and it must be taken, therefore, that any objection to them as being improper was thereby waived. The defendant cannot be permitted to take two chances. He should have acted promptly if he intended to avail himself of any objection to what plaintiff's counsel said to the jury about the records. It may well be doubted if the recent rule of this court, Rule 27 (135 N. C., 600), is not also a full answer to this objection. Those records of course were not and could not have been considered as evidence for the jury. They were made after the date when the deed was executed and the proceedings in which they were made were *ex parte*. If made before that time, they might have been competent, but not conclusive as to the insanity of Nancy Sprinkle. The presumption arising from them in such a case could be rebutted and the very truth be made to appear, that is, that while they showed insanity, it did not in fact exist at the time the deed was executed. This is at least true as to all persons not parties or privies to the inquisition, as for example, a grantee of the lunatic, who being a stranger to the inquisition could not traverse it, which was formally done by *scire facias*. *Rippy v. Gant*, 39 N. C., 443; *Arrington v. Short*, 10 N. C., 71; *Christmas v. Mitchell*, 38 N. C., 535; *Parker v. Davis*, 53 N. C., 460. The doctrine is fully discussed and the reasons for the same fully and clearly stated by *Taylor, C. J.*, in *Armstrong v. Short*, 8 N. C., 11. But it is useless to discuss the matter any further, as the records were not admitted as evidence generally, and the court has done nothing, nor has it failed to do anything with respect thereto of which the defendant has any right to complain. The record in the case of *Sims v. Sims*, was clearly incompetent as substantive testimony. It was properly excluded.

The defendant's third prayer for instructions was properly refused. The substance of it had been given by the court in its response to his first and second prayers and afterwards,

in its general charge to the jury, the defendant was given the full benefit of the principle stated in his third prayer. A judge is not obliged to repeat his instructions already given, even when specially asked to do so in a prayer. The instructions as given were quite sufficient to cover the case. *Bost v. Bost,* 87 N. C., 478; *Morris v. Osborne,* 104 N. C., 609. We have said in *Cameron v. Power Co.,* 138 N. C., 365, which sustains the charge of the court, that this court has adopted *Coke's* definition, that a person has mental capacity sufficient to contract if he knows what he is about (*Moffit v. Witherspoon,* 32 N. C., 185; *Paine v. Roberts,* 82 N. C., 451), and that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its scope and effect, or its nature and consequences, not that he should be able to act wisely or discreetly, nor to drive a good bargain, but that he should be in such possession of his faculties as to enable him to know at least what he is doing and to contract understandingly. There is no particular formula to be used in such cases, as said by the court in *Morris v. Osborne, supra,* but the law in this respect should be explained to the jury with reference to the special and peculiar facts of the case being tried, and under the guidance of such general principles as have been settled and declared by the courts.

The remaining exceptions to be noticed were taken to the refusal of the court to instruct the jury as requested by the defendant in his 13th and 14th prayers, and to the giving of the instruction requested in the 4th prayer of the plaintiff. The last two relate to the third issue, and as that issue has practically been eliminated from the case by the view we have taken of the law in respect to the verdict upon the other issues, there is no need of giving them further consideration, as they have become immaterial, and any error committed as to them, if error there be, was harmless. So that we come finally to the question raised by the refusal

to give the instruction contained in the defendant's 13th prayer. Was there any evidence that the defendant had notice of the incapacity of Nancy Sprinkle at the time she made the deed to him? We think there was not only some but ample evidence to sustain the finding of the jury. We forbear to discuss the evidence at length or in detail for the purpose of showing that it was sufficient to support the verdict of the jury. It appears that the defendant was a kinsman and neighbor of Nancy Sprinkle and had known her all his life, with the exception of a few years when he was in the West. He knew the condition of her mind. It is true he says he did not know she was insane, but the jury were not bound by this statement, and might well conclude, in view of his knowledge of her when considered in connection with the overwhelming proof as to her mental imbecility and especially when coupled with other facts and circumstances tending to show his guilty knowledge, that he must have been aware of her true mental condition. Other circumstances are that at the time she made the trade with him, her mind was so unbalanced that, in the language of one of the witnesses, "she was wild and hardly seemed to know her whereabouts." The manner in which he procured the deed, taking her away from those who could have advised her in so important a transaction and stating that he would not trade with her unless Fletcher Harris, her friend, was present, and that he was only going to the upper part of the county to get some evidence for her in her pension matter, when it turned out he was then preparing to carry her to Wilkesboro for the purpose of taking advantage of her mental weakness by inducing her to make the deed, and this he easily accomplished; her sudden change of mind when she had just told Parks that she would not make the deed—all this, and more, was evidence for the jury upon the question of her mental capacity. So weak was she that she was completely subjected to the

power and dictation of the defendant, and he must have known it if the testimony introduced by the plaintiff was credible, and the jury have said that it was. If there was any mental operation required in the transaction, it was all on his side. It seems that he could, at pleasure, mould her will to suit his own, so like was she to clay in the hands of the potter. It is needess to prolong the discussion. To-be-sure there was evidence in conflict with that offered by the plaintiff, but we are considering the version of the facts relating to the first and second issues, which was apparently accepted by the jury as the true one, and, besides, we are only required to decide whether there was any evidence of the facts to be proved, namely, the insanity and the defendant's knowledge of it.

Whether there is any difference, in moral quality, between the act of obtaining a deed for land from a woman known to be totally bereft of reason and the act of procuring one from a woman merely of weak understanding, who is unable to guard herself against imposition or to resist importunity, it does not lie within our province to decide but in law, and in so far as the validity of such transaction may be involved, we know that there is not and should not be any difference, and that either is sufficient to induce a court of equity to rescind the contract and cancel the deed, or to require the vendee to give up what he has unfairly and unjustly received, with proper deductions for any sums paid out by him, if the specific remedy of rescission and cancellation cannot equitably be administered.

There being no error in any of the rulings of the court to which exception has been taken, the verdict must stand undisturbed, and, excluding from consideration the third issue, what is left of it is certainly sufficient to warrant the judgment. 1 Bigelow on Fraud, 374; Pomeroy's Eq. Jur. (1905), sec. 947. As suggested by counsel, a court of equity would

abdicate one of its most important and characteristic functions, if it were to give effect to a transaction conducted under such circumstances as those established by the issues left standing by the court.

.  No Error.