[Civ. No. 3376.  Second Appellate District, Division Two.—October 4, 1921.]

## SAM BELLONE, Respondent, v. LENA KLEINAU, Appellant.

[1] LEASE — SURRENDER OF POSSESSION — FALSE REPRESENTATIONS — RESCISSION—RECOVERY OF PROPERTY.—Where a lease provides that the lessee shall surrender possession of the leased premises, together with the crop of fruit thereon, upon the payment to him of a given sum of money, if the premises are sold and the purchaser shall require possession before a specified date, but that if the premises are not so sold the lessee shall pay a given sum of money as rent and the crops raised on the premises shall be his property, and said lessee is induced to surrender possession of the premises and the crop of fruit thereon by the representation of the lessor that the property is so sold, upon the discovery of the falsity of such representation the lessee is entitled to rescind and repudiate the transaction, returning the money received from the lessor and paying the agreed rent, and to recover all the property he has been induced to relinquish.

[2] ID.—SALE OF CROP BY LESSOR—RECOVERY OF MONETARY EQUIVALENT.—During the period of time such lessee was out of possession, the lessor having sold the crop of fruit to a *bona fide* purchaser for value and thereby put it out of her power to make restitution of the fruit itself, the lessee, still basing his right to relief upon his rescission and repudiation of the fraudulent transaction, is entitled to recover from the lessor the money for which the fruit was sold, less the amounts due from him to her, not as damages for loss sustained, but as the monetary equivalent of the fruit which belonged to him when he rescinded the transaction.

[3] EVIDENCE — CREDIBILITY OF WITNESSES — WEIGHT OF EVIDENCE — PROVINCE OF TRIAL JUDGE—FINDINGS—APPEAL.—Matters going to the credibility of witnesses and to apparent inconsistencies between the statements of witnesses and the admitted facts ordinarily fall within the exclusive province of the trial judge, and the appellate court may not reverse his findings unless the record demonstrates that in the very nature of things the testimony of a witness cannot be true.

[4] LEASES — ACTION TO RECOVER SALE PRICE OF FRUIT — STATEMENTS OF AGENT—EVIDENCE.—In an action by the lessee to recover from the lessor the money for which the fruit was sold, after plaintiff had rescinded and repudiated the transaction whereby he had been fraudulently induced to surrender possession of the leased premises, plaintiff is properly permitted to testify, over defendant's objection, that defendant's agent told him that the premises had been sold

and that the purchaser had demanded possession, although defendant was not present at the time such statement was made, and such agent is properly permitted to testify to what he, as defendant's agent, told plaintiff respecting the sale of the ranch and the necessity for surrendering possession to the supposed purchaser.

[5] ID.—RESCISSION AND TENDER — SUFFICIENCY OF. — The letter from the lessee to the lessor having expressed the willingness and abil ity of the lessee to return to the lessor the sums of money to which the latter was entitled upon the former's repudiation of the transaction whereby he was induced to surrender possession of the leased premises, that was all that was required. It was not necessary that the language of such tender conform to technical niceties.

[6] ID. — CONVERSATION WITH AGENT — OBJECTION TO GENERAL QUESTION—ERROR.—Where, after a witness for the defendant has detailed a conversation which she had with defendant's agent, the court sustains an objection to a general question asked such witness as to whether she had any other conversation with such agent, and the defendant makes no attempt to show the nature of the conversation which she expects to prove by such witness, error is not affirmatively shown.

APPEAL from a judgment of the Superior Court of Los Angeles County. L. H. Valentine, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Pendleton for Appellant.

Fred W. Morrison for Respondent.

FINLAYSON, P. J.—Defendant, who owns a small ranch in Los Angeles County, leased the property to plaintiff for the term of nine months, commencing February 1, 1919. Plaintiff, as the lessee, immediately entered into possession, and remained on the land until May 28, 1919, when, by reason of the false representation of defendant's agent, he was induced to surrender possession of the ranch and of the fruit crops growing thereon. The lease contains the following clauses: "The party of the second part [the lessee, who is the plaintiff in this action] agrees to pay to the party of the first part [the lessor, who is the defendant here] the sum of $500 [as rent] on the first day of June, 1919, provided, however, that the said party of the first part [the lessor] reserves unto herself the right to dispose of said property at any time prior to said first day of June,

1919, and in the event that the property is so sold and in the further event that the purchaser shall require possession of said property prior to the said first day of June, 1919, then, in that event, the party of the second part [the lessee] agrees to deliver possession of said premises to the said purchaser, after receiving from the said party of the first part [the lessor] the sum of $250 as liquidation damages for his work and labor on said premises; and in said event said second party [the lessee] is hereby relieved from the payment of the $500 hereinabove specified. Should the premises not be sold, then the crops raised on said premises shall be the sole property of said party of the second part.''

Some time prior to June 1, 1919, defendant instructed one Peckham, a real estate agent, to sell the property for $8,250, $2,250 to be paid in cash at the date of sale, and the balance, $6,000, within four years. Thereafter, and on or about May 16, 1919, Peckham received from one Erickson an offer to purchase the property for said sum of $8,250. Erickson paid Peckham $100 down and offered to pay the balance as follows: $650 in cash as and when the sale was consummated, $1,500 to be allowed for the fruit on the ranch, and the balance, $6,000, to be paid in six years. Peckham, whose authority to sell was oral, communicated to defendant the terms of Erickson's offer. She, however, refused to accept the offer, insisting that the balance of $6,000 be paid in four, not six, years. The result is that there never was any unconditional acceptance of any unconditional offer, and, therefore, no consummated agreement to sell. This notwithstanding, Peckham, on or about May 28, 1919—while the negotiations with Erickson were pending and when it appeared that a sale of the property might be consummated—told plaintiff that the property had been sold and induced him to accept the $250 which, in her lease of the premises, defendant had agreed should be paid to plaintiff . in the event that the property should be sold prior to June 1, 1919. At the same time, plaintiff signed and delivered to Peckham a written assignment of his interest in the lease. When this assignment was delivered by plaintiff to Peckham it did not contain the name of any assignee. Subsequently Peckham filled in his own name as the assignee. At about this time Peckham obtained from defendant a similar assignment of her interest in the lease.

It is a fair inference that plaintiff and defendant each supposed that Peckham was procuring these assignments for the benefit of Erickson, who then appeared to be a prospective purchaser of the property, and that they were executed in the belief that thus delivery of possession to Erickson would be insured.

Thereafter, on May 28, 1919, Peckham sold the fruit on the property to one Mastripolito for the sum of $1,500. Later, defendant accepted a part of the proceeds of this sale, paid to her by Peckham pursuant to a previous understanding. Mastripolito appears to have been a *bona fide* purchaser of the fruit.

About June 4, 1919, plaintiff discovered that defendant had not accepted Erickson's offer to purchase the ranch and that the property had not been sold. Accordingly, on July 5, 1919, he caused to be delivered to defendant a letter in which, after stating his readiness to return to defendant the $250 that he had received from her agent, Peckham, and to pay the rent of $500, which, under the terms of the lease, became due on June 1, 1919, he demanded repossession of the leased property, and that there be delivered to him the fruit on the ranch, or, in the event that it had been sold, the amount that defendant had received for it. Defendant disregarded this letter, and shortly thereafter this action was commenced. The lower court found the value of the fruit to be the amount for which it had been sold to Mastripolito, namely, $1,500, and gave plaintiff judgment for $750, being the amount of the proceeds of the sale of the fruit less the $250 and the $500 that, respectively, became due to defendant from plaintiff upon the latter's rescission of the transaction whereby he had been induced to surrender his lease. From this judgment defendant appeals.

Appellant contends: (1) That the amended complaint— hereafter referred to simply as the complaint—does not state a cause of action; (2) that the evidence is not sufficient to sustain certain of the findings; and (3) that the court erred in the admission and likewise in the rejection of certain items of evidence.

[1] We think the complaint states a cause of action for the relief prayed—the recovery of a money judgment. After setting forth a copy of the written lease whereby

defendant, as the lessor, had leased the ranch to plaintiff, as the lessee, the complaint proceeds to allege, in substance, that plaintiff, upon the execution of the lease, took possession thereunder and complied with the conditions thereof; that on May 28, 1919, defendant and her agent represented to plaintiff that the property had been sold and that the purchaser required possession prior to June 1, 1919; that thereupon defendant tendered plaintiff $250, according to the terms of that clause in the lease which we have quoted above; that, relying upon defendant's said representation, plaintiff accepted from the former the $250, relinquished possession of the leased premises and assigned his lease to defendant and her agent; that, in truth and in fact, the property had not been sold, and defendant's representation that it had been was false, as defendant well knew; that as soon as plaintiff discovered that the property had not been sold, he demanded of defendant and her agent repossession of the premises and the fruit growing thereon, and, at the same time, tendered to defendant and her agent the $250 that had been paid to him and also the $500 rental which the lease required to be paid on June 1, 1919, in the event that the property should not be sold prior to that date; that, though the property was not sold prior to June 1, 1919, plaintiff and her agent have taken possession thereof; that defendant refuses to deliver to plaintiff possession of the premises and the fruit; that defendant and her agent "have sold from said premises the fruit growing thereon which belonged to said plaintiff," the value whereof is $2,500; and that by reason thereof plaintiff has been damaged in the sum of $1,750, being the value of the fruit sold by defendant and her agent, namely, $2,500, less the $250 that was paid to plaintiff when he surrendered possession and the $500 that became due from him on June 1, 1919, as the agreed rental. Wherefore, plaintiff prayed judgment for $1,750.

Appellant erroneously assumes that this action is one sounding in tort, and that respondent is suing to recover damages for the deceit practiced upon him. So assuming, she attacks the complaint upon the ground that, though a defrauded party may elect either to rescind the fraudulent transaction and recover what he may have been induced to

surrender or to affirm it and claim damages, he cannot do
both. Appellant's claim, to state it in her counsel's lan-
guage, is that the complaint "undertakes to state a cause
of action bottomed upon both rescission and damages."
There is no merit in this contention. The complaint clearly
proceeds upon the theory that the transaction that involved
the relinquishment of possession by plaintiff and the ac-
ceptance by him of the agreed $250 was repudiated and
rescinded by him upon his discovering the falsity of the
representation that the property had been sold prior to
June 1, 1919. All the facts necessary to show that plaintiff
had repudiated and rescinded that transaction are set forth
in the complaint. And he is suing for the monetary equi-
valent of the fruit which defendant had put it out of her
power to restore. He is suing for that equivalent, not as
damages, but as a substitute for the fruit itself. Plaintiff
places much reliance upon the decision of our supreme court
in *Westerfeld* v. *New York Life Ins. Co.,* 129 Cal. 68 [58
Pac. 92, 61 Pac. 667], where it is held that if the fraudulent
transaction—in that case a contract of settlement or com-
promise—be rescinded or repudiated, an action sounding in
tort to recover damages for the deceit cannot be maintained.
The gist of that decision is substantially this: If the de-
frauded party has elected to stand upon and affirm the
fraudulent transaction, then he may recover damages in an
action of tort based upon the deceit, his damages being
compensation for whatever loss he may have sustained by
reason of having been induced to accept something of less
value than that for which he had bargained. But if, in-
stead of standing upon and affirming the transaction, the
defrauded party has elected to repudiate the whole fraudu-
lent transaction and thus entitle himself to be restored to
the *status quo,* he can recover that which he may have trans-
ferred to the defrauding party upon making to the latter a
proper offer to restore anything of value which he may
have received. The defrauded party may not, however,
recover the property or thing of value that he was induced
to transfer to the defrauding party, and, in addition, dam-
ages occasioned by the deceit. The complaint in the instant
case does not do violence to the principles announced in the
Westerfeld case. The facts alleged in the complaint show
that plaintiff elected to repudiate and rescind, and that he

has repudiated and rescinded the fraudulent transaction which resulted in his loss of possession of the leased land and the fruit growing thereon. Having thus repudiated that transaction, plaintiff became entitled to recover all the property that he had been induced to relinquish—the land and the fruit. **[2]** But the complaint discloses that a valuable part of the relinquished property, the fruit, had been sold by defendant to an innocent purchaser before the action was commenced, thus revealing the fact that defendant has put it out of her power to make restitution of the fruit itself. Such being the case, plaintiff, still basing his right to relief upon his rescission and repudiation of the fraudulent transaction, is entitled to recover from defendant the money for which the fruit was sold, less the amounts due from him to defendant, namely, the $250 that was paid to him by defendant's agent when he was induced to surrender the leased property, and the $500 rental that would have become due from him to defendant on June 1, 1919, had he not surrendered the leased property to defendant's agent. Any money judgment that might be given upon the cause of action alleged in the complaint would be given, not in affirmance of the fraudulent transaction, but for the monetary equivalent of fruit which, as between plaintiff and defendant, belonged to the former when plaintiff rescinded the fraudulent transaction. Such monetary equivalent is recoverable, not as damages, but as a substitute for the fruit that defendant is unable to restore. In support of our conclusion that the complaint states a cause of action and that it warrants the relief that was granted, reference may be had to the following cases—if, indeed, any authority be necessary to sustain so plain a proposition: *Sprinkle* v. *Wellborn,* 140 N. C. 163 [111 Am. St. Rep. 827, 3 L. R. A. (N. S.) 174, 52 S. E. 666], and *Valentine* v. *Richardt,* 59 Hun, 619 [13 N. Y. Supp. 417]; affirmed in *Valentine* v. *Richardt,* 126 N. Y. 272 [27 N. E. 255].

It is earnestly urged that the evidence is insufficient to justify certain of the findings. **[3]** This contention is based largely upon matters going to the credibility of the witnesses and to apparent inconsistencies between the statements of certain witnesses and the admitted facts. Such questions ordinarily fall within the exclusive province of the trial judge, and we may not reverse his findings unless the record

demonstrates that in the very nature of things the testimony of a witness cannot be true. We have no such case here. It would serve no useful purpose to set forth the testimony *in extenso* or to consider in detail all of the matters as to which it is claimed the evidence is insufficient. It will suffice to consider those upon which appellant chiefly relies.

It is urged that there is nothing in the evidence to show that defendant represented to plaintiff that the property had been sold. The claim is that the evidence does not show that defendant's agent, Peckham, was authorized to represent to plaintiff that the property had been sold and that the purchaser required possession. Defendant testified that she "gave Peckham the ranch to sell; that he had the right to sell it." He had previously acted for defendant in other matters. The evidence as a whole warranted the inference that defendant had verbally authorized Peckham to do whatever might be necessary to sell the property, on terms satisfactory to her, and to put the purchaser in possession if he should succeed in selling the property on satisfactory terms. It also is a fair inference from the evidence, considered in its entirety, that defendant left to her son, as well as to Peckham, all matters connected with the sale of the ranch. She and her son testified that the son, prior to June 1, 1919, presumably with defendant's knowledge and consent and as her representative, told plaintiff over the telephone that the property had been sold, that the purchaser required possession, and that Peckham would pay plaintiff the $250 which, by the terms of the lease, was to be paid to him in the event that the leased property should be sold before the 1st of June. It sufficiently appears, therefore, from defendant's own testimony, that through her authorized agents, Peckham and her son, she notified plaintiff that the property had been sold and that possession would be required by the purchaser.

The evidence shows beyond all cavil the falsity of the representation that the property had been sold. There never was any meeting of the minds of defendant and the prospective purchaser, Erickson, respecting terms of sale. Erickson offered to pay the balance of $6,000 in six years; defendant insisted upon that balance being paid in four years; the two never did come to an agreement; and Erickson's offer to purchase on the terms proposed by him never was

unconditionally accepted. Therefore, there never was a sale of the premises. Defendant is charged with knowledge that the property was not sold and that the representation that it had been was false. In the very nature of things, she must be deemed to have known whether or not she had sold her own property.

It is claimed that the evidence shows that Peckham, when he sold the fruit, was acting in his own behalf, or as Erickson's agent, and not for or on behalf of defendant. Upon this issue there was a sharp conflict in the evidence. There was, however, testimony sufficient to sustain the finding that defendant sold the fruit through Peckham as her agent. The receipt that was given by Peckham to Erickson for the $100 deposited by the latter when he made his offer to purchase shows, as we interpret it, that one of the terms of the proposed sale was that Erickson would allow $1,500 for the fruit. Peckham testified that Erickson's proposed terms of purchase were immediately communicated by him to defendant, who, therefore, must have known that it was proposed to sell the fruit for $1,500. Indeed, Peckham testified that he told defendant that, in order to complete the deal, he would have to sell the fruit so as to realize for Erickson the $1,500 which the latter had agreed to allow therefor. Asked why he had filled in his own name in the blank space that had been left for the name of the assignee in the written assignment of plaintiff's interest in the lease, Peckham replied: "Because I was—I had—it was to give a bill of sale of that fruit. I was to handle the sale of the fruit. It was just a question. I had to sell the fruit for $1,500 in order to put this sale through, *and she [defendant] told me to go on and sell the fruit.*" After Peckham sold the fruit he divided the proceeds with defendant pursuant to an agreement which, he testified, he had theretofore made with her. Appellant makes much of the fact that, after she and plaintiff had assigned to Peckham their respective interests in the lease, Peckham, according to testimony given by defendant and her witnesses, asserted the right under these written assignments to sell the fruit as his own. But Peckham testified: "When I bought this lease, or took this lease from Mr. Bellone [meaning Bellone's assignment of his interest in the lease], I absolutely was acting merely for Mrs. Kleinau." The learned trial judge, as was his privilege, evidently be-

lieved this testimony. It was sufficient for the purpose, and we, therefore, may not reverse the finding. Without further citation from the record, let it suffice to say that the evidence fully warranted the trial judge in his conclusions upon the facts in issue. Only the apparent earnestness of counsel has induced us to give more attention to this point than it deserves in view of the rule so thoroughly established by our decisions that a reviewing court may not set aside a finding if there is any substantial evidence to support it.

Appellant was not prejudiced by the court's rulings on the admission and rejection of evidence. [4] Plaintiff, over defendant's objection, was permitted to testify that, defendant not being present, Peckham told him on May 28, 1919, that the premises had been sold and that the purchaser had demanded possession. As we already have shown, Peckham's agency and his authority to represent defendant in all matters pertaining to the sale of the premises, including delivery of possession to the purchaser should the latter require it, was sufficiently shown by other evidence in the case. It was proper, therefore, to permit Peckham to testify to what he, as defendant's agent, told plaintiff respecting the sale of the ranch and the necessity for surrendering possession to the supposed purchaser.

The court did not err in admitting in evidence the letter of July 5, 1919, from plaintiff's attorney to defendant— the letter demanding that defendant deliver to plaintiff the fruit, or pay to him the amount for which she had sold it. The claim seems to be that this letter was not a sufficient offer to restore to defendant everything of value that plaintiff had received from her under the transaction whereby he had been trapped into surrendering possession of the leased property on the supposition that it had been sold to Erickson prior to June 1, 1919. In the first place, we doubt if, under the circumstances of this case, it was necessary to offer to restore to defendant the two amounts which, on a rescission of the fraudulent transaction, should be credited to her, namely, the $250 and the $500, respectively. The $1,500 that defendant and her agent received from the sale of the fruit—fruit to which plaintiff would have been entitled had it not been sold—exceeded the aggregate of the two sums which, on plaintiff's election to repudiate the fraudulent transaction and to affirm the lease contract,

would be due from him to defendant. Defendant, therefore, would be required to account to plaintiff for a greater sum than the amount that was due from him to her. [5] But this notwithstanding, and assuming, for the purposes of this decision, that under the circumstances an offer to restore to defendant everything of value was necessary, it was not necessary that the language of the tender should conform to technical niceties. The letter of July 5, 1919, expressed plaintiff's willingness and ability to return the two sums—the $250 and the $500—to which defendant would be entitled upon plaintiff's repudiation of the transaction that resulted in the surrender by him of the leased premises. That was all that was required. (*Mitchell* v. *Moore*, 24 Iowa, 394; 9 C. J. 1213.)

[6] Complaint is made that the court erred in sustaining an objection to a question propounded to defendant's daughter when called as a witness for the defendant. That witness, after having detailed a conversation that she had had with Peckham, was asked, "Was there any other conversation that you had with Mr. Peckham at his office?" The court sustained an objection to this question. Defendant made no attempt to show the nature of the conversation that she expected to prove by this witness, and we, therefore, cannot say that it has affirmatively been made to appear that the court erred. A judgment will not be reversed unless prejudicial error be shown affirmatively. There are other objections as trivial and unimportant as those to which we have adverted. No purpose would be subserved by a more extended reference thereto. Suffice it to say that we find no reversible error.

The judgment is affirmed.

Works, J., and Craig, J., concurred.