Battle, J.
 

 The connsel on both sides have discussed the question, whether the injunction, in the present case, is a common, or a special one, according to the distinction taken between the two kinds in
 
 Capehart
 
 v.
 
 Mhoon,
 
 Busbee’s Eq. 30, and other cases. This question, we deem it unnecessary to decide, because, if we assume it to be a common one, as contended by the counsel of the defendant, still there is an equity confessed in the answer, upon which the injunction ought to be continued until the hearing.
 

 It is charged in the bill, and admitted in the answer, that on the 23rd of March, 1857, the plaintiff executed a deed to the defendant, whereby he conveyed to him all his land in fee simple, and his personal estate, absolutely, to take effect in possession after the death of the grantor, upon the expressed consideration of a debt of twenty-five hundred dollars, ($2500) due him from the grantor, and also the support of the grantor’s wife, should she become his widow, and as long as she should remain so. The bill charges, and the charge is admitted, that from and after that time, the defendant, with the plaintiff’s assent, undertook the entire management and control of his affairs, and continued in it until sometime after the bond in question was given, which was on the 7th day of June, 1858.
 

 Whatever relations may have existed between the parties prior to the execution of the deed above mentioned, it is very certain that, after that transaction, they assumed the very confidential one of principal and general manager and agent. The principal was an old, weak-minded, and intemperate man, while the general manager and agent was his cousin, and was an intelligent, active, business man. There was just such an intimate and confidential relation existing between the parties as that, which, in a similar case, induced the great Lord Eldon to set aside a voluntary settlement, obtained by a clergyman from a widow, whose affairs he had undertaken to
 
 *65
 
 manage. In the decision of that case, (which was
 
 Huguenin
 
 v.
 
 Basely,
 
 14 Ves. Jun’r. 273). Lord Eldos was, no doxrbt, greatly aided by the argument of the celebrated Sir Samuel Romilly ; an argument so masterly, that Lord Cottenham, who heard it while he was at the bar, spoke of it in terms of the highest admiration while he was giving judgment, more than thirty years afterwards, in the somewhat similar case of
 
 Dent
 
 v. Burnett, 4 Myl. and Cr. 269. The principle there decided has been applied, both in England and in this State, to all the various relations of life, in which dominion may be exercised by one person over another;
 
 Harvey
 
 v.
 
 Mount,
 
 8 Beavan, 437;
 
 Buffalow
 
 v.
 
 Buffalow,
 
 2 Dev. and Bat. Eq. 241;
 
 Mullins
 
 v. McCandless, 4 Jones’ Eq. 425. In all the cases to which we have referred, the conveyances were voluntary, or were founded upon an inadequate consideration. It was not denied, however, that the grantors had a perfect right to make donations of their property, or to enter into whatever contracts in relation to it, they might think proper. But it was held upon a great principle of public policy that, without any proof of actual fraud, such conveyances, obtained by mne,• whose position gave him power and influence over the other, should not stand at all if entirely voluntary, or should stand only as a security for what was actually paid or advanced upon them, where there was a partial consideration.
 

 We think the present case, so far as the bond is concerned, comes, directly, within the operation of this salutary rule. The bond was obtained from a confiding principal, by one who had undertaken the entire management and control of all his worldly affairs. The account, which was the consideration for it, may possibly be just and fair, though it is apparently so extravagant the principal has the right to have the question of its fairness investigated, and a court of chancery ought not to pennit the bond to be inforced against him, until that investigation has taken place. It is right and proper that the judgment, which has been obtained at law, (which is itself secured by the injunction bond) should stand as a security for whatever may be found to be justly due from the
 
 *66
 
 plaintiff to the defendant. The principle of public policy, to which we have already referred, forbids that it shall have any other effect.
 

 The order dissolving the injunction mnst he reversed, and this opinion must be certified to the Court below, to the end, that an order may be there made directing the injunction to be continued until the hearing of the cause.
 

 It can hardly be necessary for us to say, though to prevent misapprehension, we will say, that upon the hearing, all the questions, which are presented by the pleadings, will be open to investigation. Our present decision relates only to the question of the continuance of the injunction against the judgment obtained, at law, upon the bond. •
 

 Pee Cueiam, Decree below reversed.