This is an action by the heirs at law of Benjamin Pritchard, deceased, to recover the sum of $1,000 for the fraudulent purchase and subsequent sale of land, and for the cancellation of deeds alleged to have been *Page 67 
fraudulently procured by the defendant from plaintiff's ancestor. The case was tried before Foushee, J., and a jury, at the February Term, 1912, of CRAVEN.
Benjamin Pritchard was an old and ignorant negro, who could not read or write. He had frequent dealings with the defendant in 1889 and in 1903, their relations in each instance being that of (81) mortgagor and mortgagee. The defendant, as appears from his own testimony, is a money lender, and a man of intelligence and shrewdness, being far superior, in that respect, to Benjamin Pritchard. Benjamin Pritchard's land was advertised to be sold under a mortgage for $90 to J. W. Stewart, on 22 April, 1903. On 10 April, 1903, he executed a mortgage to Smith, covering the same land. On the same day, after the execution of the mortgage, Benjamin Pritchard made a deed to defendant Smith for the same land. On 22 April the land was sold under the Stewart mortgage and bought by Stewart's wife. On 24 April, two days later, Smith obtained from Stewart and wife a deed for the same land. On 24 October, 1904, Benjamin Pritchard and wife executed to Smith a deed for twenty-five acres of land, which recited a consideration of $100, which Smith said he paid for the dower right of his wife. This was a portion of the land covered by the deed from Stewart to Smith and by the mortgage and deed from Pritchard to Smith. Later, 21 November, 1904, Benjamin Pritchard executed a mortgage to Mark Dissoway, covering this same land and containing a warranty against encumbrances. This mortgage was witnessed by S. F. Faison, Smith's confidential clerk, who had witnessed the mortgage of Pritchard to Smith on 10 April, 1903, and the deed between the same parties on the same day. The note secured by the mortgage to Dissoway was indorsed by Smith, who afterwards paid it for Pritchard. Benjamin Pritchard died 17 June, 1905, being about 70 years of age.
The mortgage from Pritchard to Smith, dated 10 April, 1903, was probated on the evidence of the witness Faison, before the clerk of the court, on 11 April, 1903, but it was not recorded until 13 January, 1906, two years and nine months after its execution and nearly seven months after Pritchard's death. The deed executed the same day, covering the same land, was also probated 11 April, 1903, before the clerk, on the evidence of the same witness. This deed was not recorded until 15 January, 1909, five years after its execution and three years and six months after Pritchard's death. The defendant, in 1906, advertised the land for sale under the power in the mortgage of 10 April, 1903, (82) but the sale was stopped by the attorney of one of the plaintiffs. Defendant conveyed the land to Lon M. Gilbert, 19 April, 1909, who was a purchaser for value and without notice. The letters written by the defendant to the widow of Benjamin Pritchard, and other evidence, *Page 68 
tended to show that the defendant claimed to hold the land as security for his debt. He demanded payment of the debt, that she might save her land, and alluded to the other mortgage on the land, held by Dissoway. The letters to Pritchard and wife were written prior to the time that the land was advertised for sale by the defendant under his mortgage of 10 April, 1903.
There was evidence by the defendant's witness that on 10 April, 1903, after the mortgage of Pritchard to Smith was executed, Smith discovered that Stewart held a mortgage on the land and had advertised the land for sale, and thereupon requested Pritchard to cancel the mortgage and restore the money which he had received, which Pritchard declined to do, and it was then agreed that Pritchard should make an absolute deed for the land to Smith, which was done on that day, and the notes and mortgages given by Pritchard to Smith were then canceled, the consideration of this transaction being the surrender by Smith to Pritchard of certain personal property conveyed by the mortgage. There was evidence as to the amount advanced by Smith to Pritchard, from time to time, in the various transactions between them, covered by the notes, deeds, and mortgage, and also evidence that Smith had received payments from Pritchard by the collection of the latter's pension warrants.
At the close of the evidence the defendant moved to nonsuit the plaintiff. Motion denied, and defendant excepted.
The court submitted to the jury an issue as to whether the deed for the land had been procured by the fraud of Smith, and as to the damages. The jury returned a verdict in favor of the plaintiff on both issues, and assessed the damages at $170. The court charged the jury fully upon the question of fraud, and upon the issues as to the damages, but instructed them to ascertain how much had been advanced by (83) the defendant to Benjamin Pritchard, and how much the defendant had received from him, and further to ascertain the value of the land and to deduct therefrom the amount, if any, due by Pritchard to Smith, and also the value of the interest of one of the heirs, which Smith had purchased, and other items mentioned in the charge, and strike the balance. Judgment was entered upon a verdict for the plaintiff, and the defendant appealed.
After stating the case: The plaintiffs have elected, in this case, to sue for the value of the land or their equity of redemption therein, instead of canceling the entire transactions which culminated in the fraudulent acquisition of the title to the several tracts of land *Page 69 
belonging to the ancestor, Benjamin Pritchard; but the settlement between the parties has been conducted, under the perfectly fair and benign charge of the learned judge, upon principles obtaining in chancery, where the jurisdiction exercised is more flexible and tolerant than it would be strictly at law. Clements v. Nicholson, 73 U.S. 299. Plaintiffs have acquiesced in this adjustment, and defendant certainly has no right of objection to it. It has the clear merit of being favorable and just to him and an exemplification of the advantage in the new procedure, under which the legal and equitable rights of litigants are more carefully guarded and enforced than under the former system.
A close examination of the testimony in the case satisfies us that Benjamin Pritchard, at the time the deeds were executed, was enfeebled by old age and physical infirmities to such an extent that his mental faculties were greatly impaired, and he was not able to take care of his interests in any dealing with the defendant, and that the latter took advantage of his weakness and imbecility to effect an advantageous bargain for himself. He was evidently the master of the situation and held the will of his victim in complete subjection to his own. It further appears that the consideration for the deeds was not fair or adequate, the real value of the land far exceeding the outlay by Smith. It must be noted also that he held a mortgage with power of sale, executed by (84) Pritchard to him, and stood, therefore, in a confidential relation toward Pritchard. By their verdict the jury have found these facts, and others disclosed by the evidence, which show weakness and dependence on the one side and shrewdness and unfettered domination on the other.
"It is an established doctrine, founded on a great principle of public policy, that a conveyance obtained by one whose position gave him power and influence over the grantor, without proof of actual fraud, shall not stand at all, if without consideration, and that where there has been a partial or inadequate consideration, it shall stand only as a security for the sum paid or advanced." Bellamy v. Andrews, 151 N.C. 256, citing the following cases: Huguenin v. Basely, 14 Vesey, Jr., 273; Harvey v. Mount, 8 Beavan, 437; Dent v. Burnett, 4 Myl. Cr., 269; Buffalow v. Buffalow, 22 N.C. 241;Mullins v. McCandless, 57 N.C. 425; Futrill v. Futrill, 58 N.C. 64, and s.c., 59 N.C. 337; Franklin v. Ridenhour, 58 N.C. 421.
It has been said that a deed will be set aside on the ground of undue influence, which is a species of legal and moral fraud, only where the influence is such that the grantor has no free will, but stands in vinculis(Conley v. Nailor, 118 U.S. 127), and this rule, if applied to the facts of the case, would equally condemn the transactions assailed by the *Page 70 
plaintiffs. But the defendant was mortgagee, with a power of sale, which added much to the power he held over his weak adversary.
Approving what is stated in Bigelow on Fraud, p. 160, the Court (byJustice Ruffin) said, in McLeod v. Bullard, 84 N.C. 516, that there are certain relations, termed relations of confidence, from the existence of which the law raises a presumption of fraud in any dealings that may take place between the parties, because of the undue advantage which the situation itself gives to one over the other. Of these "relations of confidence" he enumerates eight in number and in the following order: Attorney and client; principal and agent; partners; trustees and cestuisque trustent; guardian and ward; executors and administrators; mortgagor and mortgagee; parent and child. Thus he places the relation of mortgagor and mortgagee with the other well-defined and (85) universally acknowledged fiduciary relations. Upon principle this should be so. It is due to good faith and common honestly that such a presumption should arise in every case where confidence is reposed and the property and interests of one person are committed to another. To every such person his trust should be a sacred charge, not to be regarded with a covetous eye. The Court, in that case, adopted as a correct statement of the law the following language of Chief Justice Pearson inWhitehead v. Hellen, 76 N.C. 99: "Courts of equity look with jealousy upon all dealings between trustees and cestuis que trustent; and if the mortgagor had by deed released his equity of redemption to his mortgagee, we should have required the purchaser to take the burden of proof
and satisfy us that the man whom he had in his power, manacled and fettered, had without undue influence and for a fair consideration released his right to redeem." The same principle was announced in Leev. Pearce, 68 N.C. 76. The cases, therefore, have established this rule as to the fiduciary relation: "Where a mortgagee buys the equity of redemption of his mortgagor, the law presumes fraud, and the burden of proof is upon the mortgagee to show the bona fides of the transaction."Jones v. Pullen, 115 N.C. 465.
It follows that when the defendant took a deed absolute for the property, on which, at the same time, he held a mortgage, there arose a presumption of fraud against him, which was evidence for the jury to consider in connection with the other circumstances, and the jury have found that the presumption has not been met by the defendant and the bonafides of the transaction shown, but that the very truth of the matter is in accordance with the presumption.
The purchase by the defendant from the wife of Stewart, who sold under a prior mortgage, does not help his case to the extent, as he contends, of vesting an unimpeachable title in him. It was held in Taylor *Page 71 v. Heggie, 83 N.C. 244, that a second mortgagee has no right to buy the estate of his mortgagor at a sale to satisfy a prior encumbrance, but he has a clear equity to be reimbursed for any expenditure to relieve the estate of any encumbrances, and the property in his hands is charged therewith in preference to the trusts expressed in the (86) mortgage deed.
When defendant bought from the Stewarts, he only increased the indebtedness of Pritchard, the mortgagor, to him, by the amount of his payment to them for their interest, and acquired a lien upon the land for the additional amount so advanced. We find a felicitous statement of this doctrine in Taylor v. Heggie, supra, approving what is said by Judge Gaston
in Boyd v. Hawkins, 37 N.C. 304: "`We hold it to be clear,' said Gaston,J., `that the defendant cannot take to himself the benefit of the purchase from Robards. A trustee, without the unequivocal assent of the cestui quetrust, cannot act for his own benefit in a contract on the subject of the trust. It is established upon the soundest principles that, if he should so contract expressly for himself, he shall not be suffered to turn the speculation to his own advantage.' While, then, the trustee is disabled from acquiring a paramount title in another to the trust estate for his personal advantage, and in disregard of the equitable interests of those represented by him, he has a clear right to reimbursement of the moneys expended in making the purchase or removing the encumbrance; and the estate in his hands is charged therewith in preference to the trusts expressed in the deed."
These principles fit into this case, when we recall the facts. Defendant took a mortgage on the land, subject to Stewart's prior mortgage. The same day he took an absolute deed for the property, upon the same consideration as expressed in his mortgage, with knowledge of the prior mortgage of Stewart and the fact that the latter had advertised the land for sale. He afterwards buys from the Stewarts and withholds all the deeds from registration until some time after Pritchard's death. He then buys other land from Pritchard and takes deeds therefor, there being evidence that the consideration for the several deeds was inadequate and for much less than the real value of the land. He offered the evidence of his confidential clerk to prove that the deed of 10 April, 1903, to him was given with the understanding that he should surrender certain personal property belonging to Pritchard, upon which he had a lien, and cancel the mortgage of the same date; and yet, in (87) 1906, he has the mortgage registered and advertises the land for sale under it, and in other ways he indicated by his conduct that he regarded the mortgage as still on foot and the relation of mortgagor and mortgagee as still subsisting. It is impossible to scan the evidence and not conclude from these facts, virtually uncontroverted, either that the *Page 72 
defendant had practiced a fraud upon Pritchard by which he procured title to his land or that he must be considered as still a mortgagee by his own words and conduct. Either view leads to substantially the same result and sustains the verdict and judgment as to the cause of action.
We have indicated that plaintiff could elect to sue for damages at law, or proceed in equity to have the deed canceled. But it appears that the land had passed to a bona fide purchaser for value and without notice of the fraud, and in such a case it is clear that, as the plaintiff cannot recover the land in specie, he can have a money judgment for the loss caused by the defendant's fraud. Sprinkle v. Wellborn, 140 N.C. 163. It was there said that "Wellborn, having sold the land to a bona fide purchaser, and thereby deprived his vendor of the land itself, and having received the price, he must, by reason of his fraudulent disposition of property, which he is considered to have held in trust, and of its conversion into money, be held responsible for the amount of the consideration paid to him. The money in his hands stands for the land. Wait Fraud. Conv. (3 Ed.), sec. 178; Holland v. Anderson, 38 Mo., 55; Lawrence v. Bank, 35 N.Y. 320;Dilworth v. Carts, 139 Ill. 508; Hazen v. Bank, 70 Vt. 543. But the administration of this relief is eminently proper under the reformed procedure, where the rights of parties are settled and determined in one action, the distinction between actions at law and suits in equity having been abolished. 1 Pom. Eq. Jur., sec. 242."
The actual loss to plaintiff was ascertained upon equitable principles, all pertinent items having been brought into the account, leaving, therefore, no ground for complaint to the defendant.
The evidence as to the fraudulent character of the deeds, other (88) than the mortgage, was clearly competent, as they were all but parts of one and the same series of acts to effect a common object. It was proper to consider all of them in order to arrive at the intent of the defendant and to determine the true nature of the transaction.Gilmer v. Hanks, 84 N.C. 317. The value of the lands was relevant evidence upon the question of fraud. There was no error in refusing the plaintiff's motion to nonsuit. This is a clear deduction from what we have already said in regard to the general question involved in this case.
No error.
Cited: Fields v. Brown, post, 297; Daniel v. Dixon, 161 N.C. 381; Torreyv. McFadyen, 165 N.C. 239, 241; Owens v. Mfg. Co., 168 N.C. 399. *Page 73