R. M. SUTTON COMPANY ET AL. v. M. M. WELLS, MAGGIE R. TREADWAY ET AL.

(Filed 27 May, 1919.)

1. **Fraudulent Conveyances — Deeds and Conveyances — Debts — Creditor's Bill.**

    A gift of lands cannot be set aside by subsequent creditors of the donor on the ground that he had not retained property amply sufficient to pay his debts, unless the existence of an unpaid debt is shown at the time of the execution of the conveyance.

2. **Same—Mortgages—Equity—Purchase by Mortgagee—Execution.**

    Where a trustee in a deed of trust for the benefit of creditors has settled all claims against the estate, and under the direction of the trustor has conveyed his lands to a third person as security for a debt then incurred, and thereafter a settlement is made upon the payment of certain moneys to the trustor and an exchange of lands, and thereafter the trustor again failed in business and made an assignment: *Held,* the later transaction closed the relation of mortgagor and mortgagee theretofore existing, and therefore there was no existing equity of the donor which his later creditors could subject to the payment of their debts, there being no creditor to satisfy at the time of the execution of the second deed which satisfied the mortgage.

3. **Same—Exchange of Lands.**

    A transaction between a mortgagor and mortgagee, wherein the latter afterwards acquires the equity in consideration of an exchange of lands and money paid, will not be set aside in a creditor's suit, the supervision of equity being to prevent fraud and oppression, where the credits were made after the cessation of the mortgage relation, and it is not shown that any prior creditor was complaining or existed, and the right claimed to follow the funds in the exchange of the lands will be denied.

APPEAL by plaintiffs from *McElroy, J.,* at the January Term, 1919, of HAYWOOD.

This is an action brought by the creditors of M. M. Wells, in the nature of a creditor's bill, against the said M. M. Wells, Maggie R. Treadway and husband, J. R. Treadway, and C. T. Wells to recover judgment against the said M. M. Wells for amounts due each creditor, respectively, and to set aside a deed as fraudulent executed by C. T. Wells and wife to Maggie R. Treadway, at the instance of M. M. Wells, and to have Maggie R. Treadway declared a trustee, holding the land

described in said deed in trust for M. M. Wells, who died intestate since the commencement of the action, and his death having been suggested, his heirs and administrator were made parties by order of court.

On 27 August, 1903, the intestate, M. M. Wells, was owner of a one-half acre of improved land in the town of Canton, referred to as *tract one,* and being heavily involved, made a conveyance thereof and a bill of sale of certain merchandise to R. Winfield "to be used in settling with, paying off, and satisfying" the creditors of intestate. Winfield "settled with and paid off the creditors" of intestate, receiving the merchandise as the consideration therefor, and by direction of intestate conveyed the land (*tract one*) to intestate's sister, Maggie R. Treadway, on 30 September, 1903, as security for moneys advanced and to be advanced by her to intestate, and the relation of mortgagor and mortgagee was thereby created between intestate and Mrs. Treadway. This relation continued from 30 September, 1903, until 1 September, 1914, when intestate and Mrs. Treadway jointly conveyed the land to C. T. Wells and wife in consideration of a house and lot in Canton known as *tract two* and the sum of $5,000 in money and the half-interest of C. T. Wells in a stock of merchandise, and C. T. Wells thereupon executed the deed for "Tract Two" to Mrs. Treadway, and intestate received the $5,000 and the merchandise.

This stock of merchandise was in the buildings of *tract two,* and J. R. Treadway, the husband of Maggie R. Treadway, was the owner of the other half-interest. The business was conducted by intestate and J. R. Treadway for some time, and intestate then purchased the interest of J. R. Treadway and became the sole owner. The intestate took charge of the stock of goods and rented the upstairs of the building to J. R. Price, except one room which he retained for himself, and remained in possession until he made an assignment on 20 September, 1915. *Tract two* was listed for taxes in May, 1915, by and in the name of intestate, and intestate paid the State and county taxes for that year, but the town taxes were paid by Mrs. Treadway after the death of intestate. The intestate died on 16 December, 1915. *It was admitted that intestate was not indebted to any person at the time "Tract One" was conveyed by Winfield to Mrs. Treadway, and that intestate was not indebted at the time "Tract Two" was conveyed by C. T. Wells to Mrs. Treadway.*

"After the trial had commenced and the pleadings had been read, counsel for the plaintiffs stated to the court that at the time of the conveyance of the land in controversy by C. T. Wells to Maggie R. Treadway, the intestate, M. M. Wells, was not indebted and that the plaintiffs were unable to produce any written evidence that said Maggie R. Treadway was holding the legal title to said land in trust for said M. M. Wells. Thereupon the court stated that he was of the opinion that the

plaintiffs would first have to lay a foundation for the admission of evidence of transactions between said Maggie R. Treadway and M. M. Wells prior to the execution of said deed by showing that the conveyance was made by C. T. Wells to Maggie R. Treadway with actual intent on the part of said M. M. Wells to defraud future creditors, and that said Maggie R. Treadway was a party to said fraudulent arrangement and understanding."

The plaintiffs offered other testimony tending to show that Mrs. Treadway was not the owner of "Tract One," consisting of declarations and acts of ownership on the part of the intestate, including his statement that the absolute conveyance by Winfield to Wells was in fact a mortgage, but his Honor excluded the testimony, his ruling being as follows:

"It appearing to the court from the allegations of the complaint and the admissions in the answer that the conveyance of Tract No. 1 by Mrs. Treadway and husband and M. M. Wells to C. T. Wells on 1 September, 1914, eliminated the trust established theretofore created and existing by virtue of the deed from M. M. Wells to Winfield, and from Winfield to Mrs. Treadway, and that at the time of the conveyance of the property by Mrs. Treadway and husband and M. M. Wells to C. T. Wells on 1 September, 1914, that there is no contention that the said M. M. Wells was indebted to the plaintiffs or to any one else; all evidence bearing on the question of the trust estate created and existing prior to 1 September, 1914, is excluded by the court."

The plaintiffs contend:

1. That the deeds of 1903 and 1914 to Maggie R. Treadway were without consideration, and are fraudulent and void as to the plaintiffs, creditors of M. M. Wells.

2. That whether upon a valuable consideration or not the deed of 1903 was executed as a security for debt, that this established the relation of mortgagor and mortgagee, and as the land in the deed of 1903 was exchanged for the land in the deed of 1914, the same relation exists as to the last tract of land, and that therefore Maggie R. Treadway holds an interest in said land, the equity of redemption, in trust for M. M. Wells, and that this can be subjected to the payment of the plaintiffs' debts.

At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiffs excepted and appealed.

*J. T. Horney, W. J. Hannah, and Morgan & Ward attorneys for plaintiffs.*

*J. Scroop Styles, Smathers & Clark, Felix E. Alley, and Mark W. Brown attorneys for defendants.*

ALLEN, J.   The first position of the plaintiffs cannot be sustained because they are subsequent creditors, and they admit that M. M. Wells owed nothing at the time of the execution of the deeds they seek to attack, the controlling principle being stated in *Aman v. Walker,* 165 N. C., 227, as follows: "If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution, which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally."

The second position is upon the ground that the deed of 1903, although absolute in form, was intended as a security for debt, and established the relation of mortgagor and mortgagee, and that from this relationship a presumption of fraud arises as to dealings between the mortgagor and mortgagee, and casts the burden on the mortgagee to show that the transaction was fair and free from fraud, undue influences or oppression, and the burden being on the defendants, it was error to enter judgment of nonsuit.

The principle contended for is well supported by authority (*Pritchard v. Smith,* 160 N. C., 84; *Alford v. Moore,* 161 N. C., 386), and has been rigidly enforced, but it has no application on the admitted facts, for the reason that the trust relation was closed by the execution of deeds between the parties in 1914, before the debts due the plaintiffs came into existence, and no one who then had any interest in the property is complaining.

"It is a rule of equity not to allow the mortgagee to enter into a contract with the mortgagor, *at the time of the loan,* for the absolute purchase of the estates for a specific sum, in case of default made in the payment of the mortgage money at the appointed time, justly considering it would throw open a wide door to oppression and enable the creditors to drive an inequitable and hard bargain with the debtor, who is rarely prepared to discharge his debt at the specified time. But even in equity, the mortgagee at a subsequent time may purchase the equity of redemption as well as a stranger, for then the mortgagor is not so much in his power, as he may himself redeem the mortgage or sell the estates mortgaged to another person, and raise the money and discharge the mortgage." *Shelton v. Hampton,* 28 N. C., 218.

The mortgagee having this right to buy the equity of redemption, subject to the supervision of a court of equity, exercised to prevent fraud and oppression, and no one having any interest in the property or the right to follow its proceeds at the time of the execution of the deed in 1914 raising any objection, the relation of mortgagor and

mortgagee was then closed by the deeds then executed, and the plaintiffs,. whose debts were thereafter contracted, have no right to complain.

Affirmed.