The plaintiff sued for the recovery of a lot in Kinston. He alleged ownership and right of possession, and the defendant's unlawful withholding of the possession from him. The defendant denied plaintiff's allegations, except as to her possession (207) and the plaintiff's demands for the possession, and further denied that she executed to the plaintiff the deed under which he claims the land, and averred that if she did execute it she did not, at the time, have sufficient mental capacity to do so, being then very old, about 78 years of age, and greatly enfeebled in mind and body and very decrepit, and her mental faculties impaired by the infirmities of old age and by "wretched physical health. " That her daughter had advised her to come to New York where she resided, presumably so that she might care for her. We will state the remainder of her averments in her own language. While in this enfeebled mental and physical condition, as above described, "the question arose as to what would be done with her interest in said lot; she talked the matter over with the plaintiff, who was her next-door neighbor and *Page 222 
in whom she had implicit confidence, and she did state to said plaintiff, upon his suggestion that he would take the land while she was away, that she would be willing to let him have it if she went to New York at the rate of $25 per year, and at the same time she expressly stated to the plaintiff that it was her dower right and her only home, and that she had refused many times to sell it for large and valuable considerations, and that under no conditions would she part with her home so that she could not return to it. That she does remember agreeing that the said plaintiff might have the use of the lot of land during her absence at the rate of $25 per year, with the understanding that she in no way released her life estate therein, and should have her home returned to her when she returned to Kinston, but she denies that she ever agreed to anything else and she has no knowledge of any other understanding. And furthermore, this defendant alleges that the plaintiff expressly stated and promised her in his conversation on the subject that she should not be disturbed in her home, and that the transaction that he referred to was for her protection, and that he was only to have the land during her absence from Kinston, and at the same time he proffered and offered his help in getting away from Kinston, and promised that if necessary he would help her in returning to her home when she desired to return, and that in all these promises and conditions this defendant absolutely and implicitly relied upon the plaintiff to carry same out as same were understood by her and stated to her. That the plaintiff well knew and understood the weak and decrepit physical and mental condition of this defendant at the time herein before mentioned, and well knew that she was a very aged colored woman, and had no knowledge of business transactions, and further well knew that she relied upon him to protect her, and the promises, statements and representations herein made were made with such knowledge on the part of the plaintiff were relied upon by the defendant and (208) served as an inducement upon which she acted. Whatever action she took at the time, and the only action which she knows of or understood, however, being the verbal agreement herein referred to. That the said lot of land is a valuable lot in the city of Kinston, on McIlwean Street, being one of the principal residential streets of the city, and being in a section where many of the most desirable citizens of Kinston reside, and constituting one of the most desirable residential sections of said city. That the said lot is in dimensions 80 feet front on McIlwean Street by 169 feet deep, and that its rental value with the small house upon it in which this defendant resides would be at least $100 per year. That the consideration appearing in the purported paper-writing under which plaintiff *Page 223 
claims is so grossly inadequate, and especially considering the conditions hereinbefore set forth, and the difference in station, ability and standing of the parties, that this defendant is informed, believes and avers that in equity the said consideration would necessarily shock the conscience of the court, and would not support an absolute deed to the life estate of the defendant to the said lot, even if such deed has been executed, which latter matter of the execution of the said deed is expressly denied. That the defendant is informed, believes and avers that upon all the facts herein alleged the court of equity will not permit the plaintiff to recover possession of the lot of land by virtue of the purported paper-writing herein referred to, and that said paper-writing is a cloud upon defendant's life estate, which she is entitled to have removed, and that said paper-writing is absolutely invalid and void. That further, this defendant now being eighty years of age and in weakened physical condition, unable most of the time to leave her bed, has no other property whatever except her interest in the lot herein set forth. That she is absolutely without any other home, and that if the court should sustain the alleged paper-writing under which the plaintiff claims in this case it would result in taking from the defendant her home and leave her without any place of abode whatsoever."
There is a prayer for the proper relief. The court refused to submit issues tendered by the defendant as to fraud or undue influence, or to hear evidence offered by the defendant upon any such issues as defendant has denied the execution of the deed. Defendant excepted. The court then submitted issues as to the execution of the deed, defendant's mental capacity and plaintiff's ownership of the land, which the jury answered in favor of the plaintiff. Judgment upon the verdict, and defendant appealed.
after stating the case as above: The only question before us is the sufficiency of the answer to raise (209) the issues tendered by the defendant regarding fraud and undue influence. We are required by the Statute (Rev., sec. 495) to construe a pleading liberally, and in enforcing this provision we have adopted this rule; that if any portion of it or to any extent it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleadings will stand, however in artificially it may have been drawn or however uncertain, defective and redundant may be its statements *Page 224 
for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader. This is what we held inBlackmore v. Winders, 144 N.C. 212, and more recently in Brewer v. Wynne,154 N.C. 467; Renn v. R. R., 170 N.C. 128, 136; Lee v. Thornton,171 N.C. 209.
There is no magic in using the word "fraud," as a term, in order properly to plead fraud, nor is it necessary to state "undue influence" in those words in order to rely upon such a plea. It is sufficient to state the facts from which fraud and undue influence arise. While this has been held in numerous cases there is a good statement of the doctrine in 12 R. C. L., at p. 417, sec. 164, to this effect. While fraud must be clearly charged, it is not necessary to allege it in terms if the facts alleged are such as in themselves constitute fraud, or if so alleged that fraud may be inferred or presumed, for the acts charged are not less fraudulent because the word "fraud" or "fraudulent" is not employed by the pleader in characterizing them. In other words, an allegation of facts from which the conclusion of fraud may result is sufficient.
Now as to what is sufficient to constitute fraud or undue influence. Although the plaintiff be not a lunatic or insane, yet if her mind was so weak that she was unable to guard herself against imposition, or to resist importunity or the use of undue influence, equity will grant her the relief she seeks, provided it be shown that she has been imposed upon by the use of either of the means enumerated. Mere weakness or inadequate consideration, however, will not be sufficient. A court of equity cannot measure the understandings or capacities of individuals. Where there is a legal capacity there cannot be an equitable incapacity apart from fraud. 1 Fondl. Eq., B. 1, M. 2, S. 3. If she be of sane mind she has a right to dispose of her property, and her will stands in place of a reason, provided the contract or act justifies the conclusion that she has exercised a deliberate judgment such as it is, and has not been circumvented or imposed on by cunning, artifice, or undue influence, means abhorrent to equity, and constituting fraud. Rippy v. Gant, 39 N.C. 445. "The mere fact that a man is of weak understanding, or is below the average of mankind in intellectual capacity, is not of itself an adequate ground (210) to defeat the enforcement of an executory contract or to set aside an executed agreement of conveyance. But where mental weakness is accompanied by other inequitable incidents — such as undue influence, great ignorance and want of advice, and inadequacy of consideration — equity will interfere and grant either affirmative or defensive relief. " Eaton on Equity, p. 317; Sprinkle v.Wellborn, 140 N.C. 173, 174. Lard Hardwicke, in Earl of Chester- *Page 225 field v. Janssen, 2 Vesey Sr. 125, said there is a third kind of fraud, in his classification which has been generally adopted, which may be presumed from the circumstances and conditions of the parties contracting; and this goes further than the rule of law, which is that it must be proved and not presumed; but it is wisely established in this Court to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do is equally against conscience as to take advantage of his ignorance. The subject is fully discussed in Sprinkle v. Wellborn, supra;Pritchard v. Smith, 160 N.C. 79, and in Hodges v. Wilson, 165 N.C. 323, where the cases are collected and the limitation of the doctrine with respect of fraud in conveyances is properly limited. See, also, the following other cases decided by this Court: Smith v. Beatty, 37 N.C. 456;Suttles v. Hay, 41 N.C. 124; Mullins v. McCandless, 57 N.C. 425; Hartlyv. Estis, 62 N.C. 167; Myatt v. Myatt, 149 N.C. 137; Bellamy v. Andrews,151 N.C. 256; Braddy v. Elliott, 146 N.C. 578; Buffalow v. Buffalow,22 N.C. 241, and Futrill v. Futrill, 58 N.C. 61 (S. c., 59 N.C. 337). The last case, while slightly different in its facts, and in some respects not so very material, lays down the rule which should govern in cases where there is no technical or well-defined confidential relation but where there was professed friendship for the grantor, and acquired influence over him and circumstances of imposition, oppression and deceit, the grantor having become enfeebled in mind and body, and the deed having been procured when the grantor was in no condition to understand it and did not know its contents, and had no sufficient opportunity to obtain the counsel and advice of a disinterested friend, relying upon the trust and confidence he placed in the grantee instead.
With these authorities before us let us briefly review the facts as alleged in the answer, for the action of the judge in disregarding them as not pertinent and his refusal to submit issues upon them were the same as if the plaintiff had demurred to the defense so set up. We must assume these allegations to be true upon this appeal, although it may hereafter so happen that the proof will not substantiate the charge. The defendant was, at the time of this transaction, very old (now 80 years of age) and decrepit, in wretched physical health, unable most of the time to leave her bed, and without such mental capacity as would enable her to execute a deed understandingly. She was going to New York to spend a while with (211) her daughter and wished to lease her home while she was absent. She had been offered many times a large price for it, and had refused to sell. In this situation she thought of the plaintiff as being her neighbor who lived next door to her, and who had *Page 226 
ostensibly been a friend in whom she had placed "implicit confidence." She turned to him for succor, and upon his suggestion that he would take the land while she was gone, she stated to him that she would take twenty-five dollars per year if she did go to New York, remarking at the time that it was her dower and her only home, and that under no condition would she part with this land so that she could not return to it, and it was agreed that it should be returned to her when she came back to Kinston, so that she should not be disturbed in her home. That this was the only understanding. That he promised to help her go to New York and return to her home, and she relied upon all these promises when she signed the paper. That the plaintiff well knew of her weak and decrepit condition and of her age, and also that she relied upon him to protect her; and his promises and his attitude towards her were the inducements to sign the paper. The said lot is a valuable one, being situated on one of the principal residential streets and is one of the most desirable lots in the city of Kinston, it being 80 feet in width by 169 feet in length, and its rental value is at least $100 per year. That the consideration stated in the deed held by the plaintiff is a grossly inadequate one (being only twenty-five dollars annually so long as the grantor lives); so gross that it would "shock the conscience and moral sense of the court. " That the difference in the station, ability, and standing of the parties is very great, defendant being the weaker of the two. That if the lot is taken from her she will be left without any place of abode. Upon the allegations, and in accordance with the precedents, we are of the opinion that the case should be submitted to the jury upon both issues — fraud and undue influence. The latter, while generally classed under the title of fraud, is not necessarily a fraudulent influence though it frequently is so. It is a controlling influence when the weaker succumbs to the stronger and the latter's will is substituted for that of the former. It is a paramount influence, and when it is used for the benefit or advantage of him who exercises it for such a selfish purpose it may well be called "fraudulent," and the law so regards it; but there may be cases where it is not actually fraudulent but in a moral sense innocent though not harmless.
In this case we have allegations sufficient to show fraud and undue influence, viz.: mental and physical weakness and imbecility, extreme old age, grossly inadequate consideration, greater superiority of the one over the other, the relation of friend and advisor, and consequent full confidence of the weaker in the stronger and (212) reliance on him, the necessary condition of the defendant, and finally an allegation of a virtual misrepresentation as *Page 227 
to the contents of the deed, which is an absolute conveyance of the land, and not a lease, founded upon a small consideration.
The defendant could plead double, and set up inconsistent or contradictory defenses. McLamb v. McPhail, 126 N.C. 218; Williams v.Hutton, 164 N.C. 216; Clark's Code (3d Ed.), sec. 245; 1 Pell's Revisal, p. 226, sec. 482, and note with cases.
It may be that in the development of the case the defendant's proof may not sustain her allegations of fraud and undue influence, but what she has charged is sufficient in law and entitles her to be heard before the jury.
As the issues will be somewhat interdependent and injustice may be done by allowing them as now answered to stand, we direct that they be set aside and that the whole case be tried again upon all of the issues which are raised by the pleadings, and it will be so certified.
New trial.
Cited: Bell v. Harrison, 179 N.C. 195; Little v. Bank, 187 N.C. 5; S.v. Bank, 193 N.C. 528; Lee v. Produce Co., 196 N.C. 718; Joyner v.Woodward, 201 N.C. 317; Cotton Mills v. Mfg. Co., 218 N.C. 562; Presnellv. Beshears, 227 N.C. 582; Bryant v. Ice Co., 232 N.C. 268; Guerry v.Trust Co., 234 N.C. 646.